# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF NORTH DAKOTA

J. E. ENGSTAD, *et al.* *vs.* JOHN DINNIE, *et al.*

Opinion filed June 4th, 1898.

**Municipal Corporations—Tax Levy—Appropriations.**

> *Held*, construing sections 2190, 2262, Rev. Codes, that a valid tax
> levy cannot be accomplished by a mere resolution adopted by a city
> council, which purports to levy certain amounts for the general fund,
> interest fund, and sinking fund for the fiscal year. It is essential to
> the validity of a tax levy under section 2190 that the council should
> adopt, either prior to or at the time of the levy, an ordinance embracing
> the annual appropriation bill for the current year, specifying the several
> purposes for which the appropriations are made, and the amount
> appropriated for each. The levy must be "based upon the annual
> appropriation bill for the year."

**Annual Appropriation Bill—Validity.**

> The city council of the City of Grand Forks, at its regular meeting
> held on September 9, 1897, passed a certain resolution whereby
> certain sums as taxes were attempted to be levied for the general
> fund, the interest fund, and the sinking fund for the current fiscal
> year. No annual appropriation bill for that year had been enacted
> at that time. Subsequently, and on December 18th of the same year,
> said city council adopted an ordinance entitled "Annual Appropri-
> ation Bill," and whereby various sums were attempted to be appro-
> priated out of the general fund for that year. *Held*, under section
> 2262, that said purported appropriation bill was null and void. Said
> bill was not sanctioned by a majority of the voters, nor by a two-
> thirds vote of the council, and the same was in no wise connected
> with the attempted tax levy for the fiscal year. Under the charter,
> the enactment was too late.

**Extraordinary Expenditures Enjoined.**

> *Held*, under said sections of the Rev. Codes, that a costly improve-
> ment, including a brick building and the necessary machinery for an
> electric light plant, to be owned and operated by the city corporation,
> cannot be paid for out of the general fund of the city, in the absence
> of any annual appropriation bill authorizing an expenditure for such
> purpose, and specifying the amount to be expended therefor. Where

there has been no appropriation and no tax levy for any such purpose, the city council cannot lawfully divert the general fund of the city in the treasury to defray the expense of building and equipping such a plant, and under such conditions all contracts to build and equip such an improvement which are attempted to be made by the city council are ultra vires and void, and the completion of such contracts may be enjoined by a court of equity in an action in behalf of the public, brought by a taxpayer for that purpose.

**Laches—Estoppel.**

*Held,* under the facts of this case, that the public represented by taxpayers was not estopped by its laches from bringing this action.

Appeal from District Court, Grand Forks County; *Fisk,* J.

Action by J. E. Engstad, Burke Corbet, J. H. Bosard, M. Reilly, James Lankin and O. E. Nash, residents and taxpayers of the City of Grand Forks, North Dakota, against John Dinnie, mayor; Frank A. Brown, auditor, and M. L. Gorden, treasurer of the City of Grand Forks, to enjoin the carrying out of a contract for the construction and equipment of an electric light plant, and to enjoin the issuance and payment of the warrants of said city to the contractors for said improvement. From a judgment dismissing the action, plaintiffs appeal.

Reversed.

*Cochrane & Feetham,* for appellants.

It is averred in the complaint and admitted by the answer that the city was indebted beyond the statutory limit when this contract was made, and the contractors were bound to know this fact. *City* v. *Gamewell,* 45 N. E. Rep. 591; *Treadway* v. *Schnauber,* 1 Dak. 227; *Farmers' etc. Bank* v. *School District,* 6 Dak. 255; *State* v. *Getchell,* 3 N. D. 243; *McCoy* v. *Brant,* 53 Cal. 247; *Doon Township* v. *Cummins,* 12 Sup. Ct. Rep. 223; *County* v. *Dickson,* 6 Sup. Ct. Rep. 901. The allegation of defendants that the contract was partially performed was impertinent. Part performance can not be urged in defense to an ultra vires contract either by way of ratification or estoppel. *Norton* v. *County,* 6 Sup. Ct. Rep. 1131; *Marsh* v. *Fulton County,* 10 Wall. 676; *County* v. *Dickinson,* 6 Sup. Ct. Rep. 897; *Kelly* v. *Town,* 8 Sup. Ct. Rep. 1101; *State* v. *Getchell,* 3 N. D. 243; *Capital Bank* v. *School District,* 1 N. D. 479. The effect of the constitutional inhibition (Sec. 183 Const., § 2148 Rev. Codes) is to require the city to carry on its operations while so indebted upon a cash system, that is payment must be provided for by levy made as distinguished from levy to be laid. *Spilman* v. *City,* 14 S. E. Rep. 283, 2 Beach Pub. Corp. § 622 n. The making of the contracts created a liability within the meaning of the inhibition. *Sackett* v. *City,* 88 Ind. 476; *City* v. *Edwards,* 84 Ill. 626; *Tennant* v. *Crocker,* 48 N. W. Rep. 579; *Spilman* v. *City,* 14 S. E. Rep. 279; *City* v. *Gamewell,* 45 N. E. Rep. 590. The debt limit having been reached the city could contract no liability not provided for in the annual tax levy without a vote. §§ 2492,

2262 Rev. Codes; 2 Beach Pub. Corp. 810; *French* v. *City,* 42 Ia. 617; *Hebard* v. *Ashland,* 12 N. W. Rep. 437; *Book* v. *Earl,* 87 Mo. 246, 254; *Francis* v. *Howard Co.,* 50 Fed. Rep. 44; *Prince* v. *City,* 21 N. E. Rep. 768; *Gould* v. *City,* 4 S. W. Rep. 650; *German Am. Sav. Bank* v. *City,* 49 Pac. Rep. 542; *Shannon* v. *City,* 69 N. W. Rep. 598; *City* v. *Gamewell,* 45 N. E. Rep. 590. No provision for this expenditure was made in the annual appropriation bill, and no tax levy made as required by statute. §§ 2263, 2262, 2190, 2264, Rev. Codes; *Shattuck* v. *Smith,* 6 N. D. 56; *Donovan* v. *City,* 33 N. Y. 290; *Tennant* v. *Crocker,* 48 N. W. Rep. 577; *Bladen* v. *Philadelphia,* 60 Pa. St. 464. Defendants as officers of the city cannot urge an estoppel against their own violation of duty and express law. *Bank* v. *School Twp.,* 1 N. D. 96; 2 Pom. Eq. § 813; *Tube Works* v. *City,* 5 Dak. 54.

*Bangs & Guthrie,* for respondents.

The complainants have by their delay suffered other parties to incur expense and to enter into contracts and engagements of a burdensome character, this laches will preclude them in obtaining equitable relief. 2 Story Eq. § 959; Herman on Estoppel § 1221; *Tash* v. *Adams,* 10 Cush. 252. Laches is a bar to relief in equity. *Smith* v. *Thompson,* 54 Am. Dec. 126; *Bausman* v. *Kelley,* 38 Minn. 197; *Kellogg* v. *Ely,* 15 Ohio St. 64; *Wiggin* v. *Mayor,* 9 Paige 24. The Court will refuse an injunction, because of the unnecessary delay of the parties seeking it, if the expense of constructing the work complained of has been incurred. *Hartness* v. *Mad River,* 6 Ohio St. 137; *Collins* v. *City,* 12 Green (N. J.) 293; *Chamberlain* v. *Town,* 14 At. Rep. 865; *City* v. *Alexandria,* 12 Pet 93; *Attorney General* v. *Ry. Co.,* 9 Green 49; *Ellis* v *Karl,* 7 Neb. 381; *Royal Bank* v. *Ry. Co.,* 150 Mass. 490; *Bigelow* v. *Los Angeles,* 85 Cal. 614; *Osborn* v. *Ry. Co.,* 37 Fed Rep. 830; *East St. Louis* v. *Ry. Co.,* 98 Ill. 415. The making of the contracts for construction of power house did not create an indebtedness against the city. A debt is a specified sum of money which is due from one person to another and denotes not only an obligation of a debtor to pay, but also the right of the creditor to receive and enforce the payment. *City* v. *Hames,* 112 Ind. 323; *French* v. *Burlington,* 42 Ia. 514; *Grant* v. *Davenport,* 36 Ia. 396; *Quill* v. *Indianapolis,* 124 Ind. 292; *Spillman* v. *Parkersburg,* 35 W. Va. 613; *Burlington* v. *Woodard,* 49 Ia. 58; *Crowder* v. *Town,* 128 Ind. 496; *Wood* v. *Partridge,* 11 Mass. 487; *Dively* v. *City,* 27 Ia. 227; *Valpariso* v. *Gardner,* 97 Ind. 1; *State* v. *McCauley,* 15 Cal. 430; *Smith* v. *Dedham,* 144 Mass. 177; *Ithica Water Wks. Co.* v. *Ithica,* 31 Hun. 426; 38 Am. Rep. 97.

WALLIN, J. This action was brought by resident taxpayers of the City of Grand Forks to enjoin said city, and its officers, who are made defendants, from completing the erection of a certain brick building, and placing therein certain machinery, and paying

for the same out of the city treasury, which building and machinery are intended to be used, when completed and furnished, as an electric light plant to be owned and operated by said city. The action was tried without a jury, and resulted in the entry of a judgment in the District Court dismissing the action, with costs against the plaintiffs. The abstract of the record filed in this Court is voluminous, and the plaintiffs' attorneys have assigned a formidable array of errors in their brief, but for the purpose of disposing of the case we have not found it necessary to pass upon any question which is not directly related to the power of the city council to contract for the electric light plant, and pay for the same out of the general fund of the city. No claim is made that the fund to pay for the plant is to be derived from any special fund arising upon the sale of bonds; on the contrary, the contention of counsel for the respondents is that the building and machinery can and will be paid for out of the general fund of the city.

To develop the pivotal question in the case it will be necessary to mention only certain facts disclosed by the record, and with respect to which there is no controversy between counsel. It is conceded that the City of Grand Forks, through its officers, and pursuant to certain bids which had been previously made in response to proposals for bids made in behalf of the city, did, on the 26th day of January, 1898, enter into certain contracts in writing as follows: One of said contracts was made by and between the City of Grand Forks and James Dinnie, whereby it was agreed that said Dinnie, for a consideration of $2,665, to be paid by the city, should erect and build a brick building for the city in accordance with plans as stated in said contract, the said building to be used as a part of an electric light plant to be owned and operated by said city. The other of said written contracts was made and entered into between the City of Grand Forks and the firm of W. F. Grey & Co., and whereby said firm, in consideration of the sum of $12,703, agreed to be paid by the city, undertook to furnish and place in said brick building a dynamo and certain machinery and appliances, as stipulated by the contract, the same to constitute a part of said electric light plant. It is conceded that prior to the commencement of this action said contracting parties, viz. James Dinnie and said firm of W. F. Grey & Co., had respectively entered upon the performance of their contracts, and had performed a part thereof, and the city had allowed a claim or bill presented on account of said contract with Dinnie, and issued and delivered to said Dinnie a city warrant therefor for the sum of $1,168.16; and the city had also issued and delivered to said firm of Grey & Co., on account of material furnished under said contract, a city warrant for $130. The right of the City of Grand Forks, which is organized under Chapter 28 of the Political Code, to enter into the contracts we have mentioned, is broadly challenged by the plaintiffs' counsel. It

is conceded that among the powers expressly conferred upon the city is that of providing for the lighting of the city. Rev. Codes, § 2148. The contention is that the city in attempting to exercise this power has wholly failed to conform to plain charter requirements, which are made prerequisites to its exercise, and without which the said contracts could not lawfully be entered into, or the plant be lawfully paid for out of the general fund of the city, or at all. In a nutshell, the claim is made in behalf of the plaintiffs that no sum or amount whatever was ever lawfully levied or lawfully appropriated by the city council to meet and defray, out of the general fund, the large expense necessarily included in the erection and furnishing of an improvement within the city such as that contemplated by the contracts we have mentioned; and consequently that the city has prematurely and without authority of law entered upon the enterprise of providing light for the city by the erection of the building and equipping the same as stated in said contracts.

We remark first, although the point was not made by counsel, that we question whether, under said charter, it would be lawful either for the city to levy or appropriate funds to build and equip an electric light plant to be owned and operated by the city, until such plant had been authorized by some ordinance passed and adopted for that purpose, and which should make provision for maintaining and operating the plant after its construction and equipment. No such ordinance was ever passed by the city council. As has been seen, the charter clothes the city council with the general power to provide for lighting the city; but the charter nowhere provides the mode or points out the manner of making such provision. In such cases the charter expressly provides as follows: "When, by this chapter the power is conferred upon the city council to do and perform any act or thing, and the manner of exercising the same is not specifically pointed out, the city council may provide by ordinance the details necessary for the full exercise of such power." Rev. Codes, § 2333; Id., § 2148, subd. 77. The manifest object of this statutory provision is to prevent, and not permit, the council to actually exercise large grants of authority without specific regulations of the same first having been made by some enactment which has the force of law. Hence the requirement that either the charter or some ordinance shall point out the manner of exercising power specifically granted in the charter. A mere resolution of the council does not suffice to meet this requirement. We mention this matter here, not as the crucial point in this case, but to call attention to the fact that when the action hereafter mentioned was taken by the city council, which bears upon the electric light plant in question, no ordinance had ever been adopted by the city council declaring that the city should build, own, or equip an electric light plant, or providing for the maintenance or control of any such plant. As has been seen, it is not pretended in behalf of the city that the funds necessary to build and equip the plant were raised or

expected to be raised by the sale of bonds, or from any fund other that the general fund of the city; and much evidence was offered at the trial in behalf of the city for the purpose of showing that the tax levy of September, 1897, for the general fund, when reinforced by certain back taxes, collected and uncollected, would furnish sufficient funds to defray the ordinary expenses of the city, and also to leave an unexpended balance sufficient to build and equip the plant in question. But, in the view we are compelled to take of the facts and issues embraced in this record, it is not, in our opinion, important to inquire whether or not the general fund was replete, or whether there was or was not on hand and available to build and equip the plant an amount of revenue, either levied or collected, belonging to the general fund of the city. We are far from being convinced by the evidence in the record that the condition of the city treasury was such that at the time said contracts were entered into the city had funds on hand belonging to the general fund sufficient in amount to meet the current expenses of the city, and build and equip an electric light plant such as was contracted for by the city. But, if such funds were available, we should still hold that the contracts in question were ultra vires. In our opinion, the objections to these contracts as binding obligations are radical and insurmountable. They were entered into at a time and under circumstances which are fatal to their validity. The contracts were without authority of law for the reason that no such improvement as that comprehended in the erection of a brick building and its equipment, with the machinery mentioned, was ever authorized or provided for either by an annual appropriation bill for said city for 1897, or by the tax levy of 1897 for the then current fiscal year. The city council of Grand Forks, at its regular meeting in September, 1897, adopted a certain levying resolution, which is the only attempt to levy a tax which was made by the council in said year. No mention was made in said resolution of any improvement of the character of that contracted for later by said written contracts, nor was the matter of an electric light plant referred to in the resolution. The wording of the said resolution is as follows: "Be it resolved by the city council of the City of Grand Forks, North Dakota, that there be, and is hereby, levied on the property subject to taxation in the City of Grand Forks, North Dakota, as taxes for the fiscal year commencing September 1st, 1897, and ending August 31st, 1898, the sum of fifty-two thousand dollars; said amount to be divided as follows: For general fund purposes, the sum of $35,000; for interest fund purposes, $15,500; for sinking fund purposes, $1,500." It further appears that said amounts were extended upon the tax books of the county by the county auditor. No annual appropriation bill was passed or adopted in said year, either prior to or concurrently with said levying resolution of September 9, 1897. Nor was there an attempt to pass any ordinance embracing an annual appropriation bill by said city council in said year other

than a certain alleged enactment which was adopted by the council on the 18th day of December, 1897, and which reads as follows:

"An ordinance making the annual appropriation for the fiscal years 1897 and 1898, entitled "The Annual Appropriation Bill."

"Be it ordained by the city council of the City of Grand Forks, North Dakota:

Section 1. Salaries and Expenses. There is hereby appropriated from the general fund of said city the sum of fifty thousand dollars ($50,000.00), or so much thereof as may be necessary, for the purpose of paying salaries of city officers, defraying the expense of erecting, completing and installing an electric light plant for said city, and the operation expense of the same during said fiscal year, and the general and incidental expenses of the city government, including the payment of city orders out of the general fund.

"Section 2. Waterworks and Filtration Plant. There is hereby appropriated the sum of fifteen thousand ($15,000.00), dollars or so much thereof as may be necessary, for the maintenance of the waterworks system and filtration plant.

"Section 3. Interest. There is hereby appropriated from the interest fund the sum of fifteen thousand five hundred dollars ($15,-500.00), or so much thereof as may be necessary, for the payment of interest on city bonds and warrants."

Perhaps the most striking feature of this alleged annual appropriation bill is the date of its adoption (December 18, 1897), when considered with reference to the alleged levy of the annual taxes for the same fiscal year, which, as appears, occurred on September 9th preceding the adoption of such alleged appropriation bill. The city charter declares that the annual appropriation bill shall be an ordinance, and further expressly declares that the city tax levy shall be "based upon the annual appropriation bill for the year." Rev. Codes, § § 2190, 2262. While it is true that the provisions of the statute with respect to the time within which any proceeding connected with the tax levy must be taken are to be construed as directory, and not mandatory, yet it is also manifestly true that the annual appropriation for the fiscal year must precede or be concurrent in time with the levy, since the levy is based thereon, and can lawfully be based on no other foundation. Section 2262 declares: "The city council shall at its regular meeting in September of each year or within ten days thereafter pass an ordinance, to be termed the annual appropriation bill, in which it may appropriate such sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation; and such ordinance shall specify the purposes of which such appropriations are made and the amount appropriated for each purpose. No further appropriations shall be made at any other time within such fiscal year unless the proposition to make each appropriation has been first sanctioned by a majority of the legal voters of such city either by a petition signed by them or at a general or special

election duly called for that purpose." A mere reading of this section of the statute in connection with section 2190, Revised Codes, suffices to demonstrate that the tax levy and the annual appropriation for city expenditures for a given fiscal year are inseparably connected with each other. The right to lay burdens upon property owners by a city tax levy is conditioned by the charter upon the passage of an ordinance which shall specify the several purposes for which the tax to be levied is to be expended, and the specific amounts which shall be devoted to each purpose. The attempted levy of taxes in the City of Grand Forks in 1897 was, therefore, abortive, and without legal validity, because the levying resolution was not authorized or supported by any existing annual appropriation for the expenditures of the city for the then current year. The case falls within the principle laid down by this court in *Shuttuck* v. *Smith,* 6 N. D. 56, 69 N. W. Rep. 5. It follows from what has been said that at the time the contracts in question were entered into the city had not made provision for any expenditure of city funds for the purposes of the contracts, nor had the city levied any taxes to meet the expense and cost of the electric light plant, nor had the city levied any taxes for the ordinary expenses of the year in question. Under the circumstances existing when the contracts were signed, there was no valid tax levy out of which the plant could lawfully be paid for; much less was there any existing levy for the specific improvement which we are considering.

We now turn to an independent ground upon which the illegality of the electric light enterprise is, if possible, more transparently conspicuous. The trial court has found, and the fact is conceded, that a majority of the taxpayers of Grand Forks have never by vote or petition given their sanction to any appropriation for an electric light plant to be owned and operated by the city. The fact is pertinent, because the statute (section 2262) inhibits the city council from making any other or further appropriations of city money for the fiscal year, after the annual appropriation bill has been enacted, without the approval of a majority of the voters. As we have seen, the annual appropriation bill is expressly required to be adopted prior to or at the time of the tax levy, and we have also seen that the statute, by its requirements, stands directly in the way of passing such annual appropriation bill at any later date, and all further appropriations after the tax levy are in terms prohibited by the charter, unless the same have the special sanction of the voters. These provisions of the organic law of the city are unambiguous, and their meaning is not obscure. They plainly show that the alleged ordinance adopted by the city council on December 18, 1897, and denominated an annual appropriation bill for that fiscal year, is utterly void, and in the teeth of express charter provisions declaring that no such appropriation bill could lawfully be enacted by the city council. Section 2262. It is not pretended that the en-

actment of December 18th has ever furnished the basis for any tax levy, or that it is legally possible that it could do so at the time it was adopted. At that time, and long prior thereto, the city and school tax levy for the fiscal year had been certified to the county auditor, and the same were on the tax list, and in the hands of the county treasurer for collection. This alleged annual appropriation, for reasons already stated, is meaningless, and utterly void, inasmuch as it did not and could not, when enacted, furnish a basis for a city tax levy, which, under the charter, is the sole function of an annual appropriation bill for any city which is organized under Chapter 28 of the Political Code. But this belated and abortive measure, even had it been enacted within the limited time, and had the same in fact furnished the foundation for the annual tax levy of September 9, 1897, would not constitute any legal basis upon which the electric light project in question could rest or find warrant of authority. A careful reading of the enactment of December 18th reveals the important fact that the same nowhere undertakes to appropriate any specific sum or amount as an expenditure for an electric light improvement for the City of Grand Forks. Its terms warrant the expenditure of no sum or amount which is stated or made definite. The law requires not only that an annual appropiration bill shall "specify" the purposes for which the appropriation is made, but it must go further and specify "the amount appropriated for each purpose." Rev. Codes, § 2262. The measure we are considering, adopted December 18th, assumed to appropriate $50,000 out of the general fund of the city for the purpose of paying salaries, and the incidental expenses of the city government, including the payment of city orders; and also, incidentally, for the purpose of "defraying the expense of erecting and completing and installing an electric light plant for said city, and the operating expenses of the same during said fiscal year." From this language it appears that, while the city council attempted to appropriate a gross amount ($50,000) from the general fund of the city for certain purposes mentioned, it does not specify the sum or amount which each or either purpose is to receive. From this language it is impossible to determine how much of this appropriation may be expended for any one purpose named in the enactment. We are far from holding that in an appropriation out of the general fund of a city to meet the ordinary expenses incident to carrying on the city government each item of expense must be anticipated, and stated in dollars and cents in the appropriation bill. No such rigid and fanciful requirement as that suggested is made by the law, and we certainly shall not attempt to read into the statute by construction any such embarrassing rule. But a costly improvement such as that contemplated in the contracts in question does not fall within the ordinary operating expenses of a city organized under the Code. The statute differentiates improvements from ordinary expenses, and places them in a class by themselves. The statute meets this

feature of the case by an express provision which forbids the city council or any officer of the city from adding an expenditure upon any "improvement" of the city over and above the amount named in the annual appropriation bill. It declares: "And no expenditure for an improvement to be paid for out of the general fund of the corporation shall exceed in any one year the amount provided for such improvement in the annual appropriation bill." Rev. Codes, § 2263. This language imports that city improvements, such as expensive public buildings, must be provided for in terms and in amount by an ordinance embracing the annual appropriations of the funds of the city. When so mentioned in the annual appropriations, the law, as has been shown, further requires the council to levy the sum appropriated upon the taxpayers of the city, and then no other expenditures therefor can be made until an additional sum is appropriated and levied in the succeeding fiscal year, except by the express sanction of the voters. We can think of no greater abuse of corporate power by the council of a city under the restrictions of said charter than would be involved in expending the funds of a city in the erection of costly public buildings and improvements without either passing an ordinance authorizing the construction of such improvements, or an ordinance appropriating any specific amount to be expended in their construction. The notion can never be tolerated that a city council may, without let or hindrance, from the law or the taxpayer, and at its election, proceed to deplete the general fund of the city by withdrawing therefrom sums of money indefinite in amount, with which to build costly public improvements, which improvements have had no legal authorization either from the council or the taxpayers, and for which no specific sums of money have ever been appropriated or levied. Once concede this power in the council, and it follows as a sequence that any city council may exhaust the general fund at pleasure by expenditures for public improvements which have no legal authorization and for the construction of which no funds have been provided. Fortunately, no such construction of the law is permissible in view of its very explicit provisions to the contrary. The conclusion which follows from the construction we have placed upon the city charter is this, viz: The electric light improvement in question never having been authorized by any legal enactment, and no appropriation therefor ever having been lawfully made, and no levy of taxes to defray the expenses of building and operating the same ever having been made, the expenditures therefor are wholly premature, and totally without warrant of law. The city was without power either to contract for, build, or operate the improvement in question. Section 2264. In short, all of its contracts and disbursements in connection with the plant were contrary to the statute, ultra vires, and therefore void; and hence all further proceedings and disbursements under the contracts should have been enjoined by the trial court.

One further matter remains to be considered. The record dis-

closes that the bids of said contractors to do the work specified in their contracts were accepted on the 18th day of November, 1897, by said city council, and that between that date and the time of the commencement of this action the contractors were not interfered with in any manner by the plaintiffs or others, but were permitted to proceed, and formally enter into said contracts, and thereafter were permitted to enter upon the performance of the work, and enter into divers engagements with other parties for work and material and machinery necessary to the full performance of said contracts. It further appears that said contractors, after their bids were accepted, and in anticipation of litigation to grow out of the enterprise, did do certain work and furnished certain material of small value for the express and avowed purpose of inviting any litigation which the plaintiffs or the public might contemplate on account of said projected enterprise; and that, no suit being brought on such invitation, said contractors did ·considerable other work before the suit was brought, and had been engaged in the prosecution of the work for the period of about one month prior to the commencement of this action and after the contracts were signed. Upon this state of facts counsel for the city strenuously contends that an equitable estoppel against the public has arisen on account of its laches, which bars this action. It should be borne in mind that the plaintiffs, by this action, are not seeking to vindicate any merely individual rights peculiar to themselves. Plaintiffs appear to have no rights to protect except those common to all the taxpayers of the city. In actions of this character, under the prevailing modern practice, a resident taxpayer is in the attitude of a champion of public interest. The taxpayer here represents the same rights and interests which at common law could only be vindicated at the suit of the commonwealth represented by its accredited representative, the attorney general, or other officer of like authority. As against the public, the doctrine of equitable estoppel by laches is very rarely applied, and then in extreme cases only. See *Schumm* v. *Seymour*, 24 N. J. Eq. 143. The facts of the case at bar certainly furnish no sufficient grounds upon which the defendants can invoke the doctrine of estoppel by laches in the interests of the contractors who are not parties to the suit. Said contractors are in no position to invoke the doctrine for a double reason. They are chargeable with notice that the charter of the city, by its express terms, prohibits the council from entering into any contract for an improvement, or expending any money therefor, unless an appropriation therefor shall have been previously made. Rev. Codes, § 2264. In addition to this statutory notice, it appears that said contractors had been expressly warned that the project of building and furnishing an electric light plant for the city would be resisted, and that, if they attempted to proceed with it, they would be enjoined by the courts. Being thus warned, the contractors did some work· on purpose to invite litigation. Under these circumstances it cannot

be urged in behalf of the contractors that they are victims of any-thing except their own misplaced confidence in promises made in behalf of the city, when both parties to the same were fully aware of their illegal character. Upon this point we quote from the opinion of the Court in one of the cases cited by counsel. *Tash* v. *Adams,* 10 Cush. 252: "All parties, therefore, have acted at their peril, with full and timely notice that the proceedings of the town in appropriating the money were to be drawn in question before the proper tribunal." The contracts with the city for this im-provement, made, as they were, in advance of an appropriation or levy of taxes therefor, were of a class of contracts which are ex-pressly prohibited by the charter. Rev. Codes, § 2264. In this class of expressly prohibited contracts the retention of the fruits of the contract does not subject the corporation to liability. *Goose River Bank* v. *Willow Lake School Twp.,* 1 N. D. 26, 44 N. W. Rep. 1002. See, also, *Tennant* v. *Crocker* (Mich.) 48 N. W. Rep. 577; *Bladen* v. *Philadelphia,* 60 Pa. St. 464; *City of Litchfield* v. *Ballou,* 114 U. S. 190, 5 Sup. Ct. 820. Our conclusion is that the learned trial court erred in entering its judgment of dismissal. The judg-ment will therefore be reversed, and a new judgment entered in favor of the plaintiffs granting the relief prayed for in the com-plaint. It will be so ordered. All the judges concurring.

## ON PETITION FOR REHEARING.

In this case the defendants have filed a petition for rehearing, urging, among other points, that this court should have regard to the motives which petitioners claim have actuated the plaintiffs in bringing this action. Their contention is that the actual plaintiffs are only nominal parties, and that the real party in interest in the background is the Grand Forks Gas & Electric Company, a private corporation, which heretofore has been furnishing light to the city and its inhabitants, and whose business interests, as is claimed, are seriously threatened by the construction of the electric light plant in question. It is true that the evidence tends to show that some of the plaintiffs—not all of them—were influenced by the officers of said corporation in instituting the action, and the question of the plaintiffs' motives was certainly called to the attention of this court upon the argument. In disposing of the case we did not allude to this feature, not because it was overlooked by the Court, as counsel suggest, but for the reason that, in our opinion, the plaintiffs' motives in bringing this action are not pertinent to any issue pre-sented in the case, and hence should properly be excluded from our consideration. If there had been no private corporation within the city whose financial interests were to be incidentally affected by the erection of the electric light plant in question, the grounds of the present action would be unchanged, such grounds not depending at all upon any private interests, but resting wholly upon matters of public concern. The right of a taxpayer to institute an action to

enjoin municipal officers from unlawfully dissipating public funds is a right common to all taxpayers, great and small, and mere private interests are not necessarily involved in suits of this character to any perceptible extent. In the case under consideration, the essential facts being conceded, the only questions to be disposed of by this Court related to the legality or illegality of the contracts in question and of the further expenditure of public funds contemplated as arising out of the performance of said contracts. Whether, in bringing this action, the plaintiffs' motives are laudable or otherwise, is as foreign to the question involved in this record as would be the question of the motives of the defendants, who are officers of the city corporation, in entering into the contracts under the conditions existing at the time the contracts were signed. Motives are often important, but here they cut no figure whatever. The crucial question in the case is one of power. The case necessarily turns upon the answer to the inquiry whether the city officials, in entering into the enterprise of building and equipping the electric plant, did so lawfully, or was their action taken in violation of law? We have discussed this question fully in the opinion handed down, and we shall not reiterate here what was there said further than to observe that reflection has served to strengthen our views upon all of the essential features of the case. The charter provisions which the defendants, as city officials, have seen fit to ignore, or squarely violate, are of a general and fundamental character, and are such as are common to a large number of cities which have already organized under the general law governing the organization of cities in this state, and must govern in the future until repealed. This charter was adopted after mature deliberation, and embraces many checks and safeguards of the highest value to the citizen and taxpayer. If the wise restraints of the city charter here referred to may be set aside at the mere will or caprice of city officials, we are aware of no instrumentalities in the law sufficiently potent to prevent municipal officers, upon any plea of expediency, or to satisfy popular clamor, or at their caprice, from violating the law by diverting the public funds into illegal channels of expenditure.

The petitioners have further reiterated their principal contention upon the argument, to the effect that the taxpayers, who are the plaintiffs, and, perforce, the champions of the public interests, in this case, have, by their delay in bringing this action, been guilty of such laches as should estop them from pointing out the public wrong in question, and demanding that it shall go no further. Answering this position, it will suffice to say that it is unnecessary to hold in this case, that the doctrine of laches, as contended for, can never be invoked in any case of this nature, although we are strongly inclined to that view. In the case at bar the record fails to show that these plaintiffs, or any of them, knew, or were ever advised, at any time prior to the verification of the complaint, that an electric light plant, to be owned by the city, had not been

mentioned either in the annual tax levy or annual appropriation bill for the fiscal year in question. These omissions of the city council are the essential facts upon which the action arose, and with reference to the question of laches the burden is upon the defense to show when these facts became known to the plaintiffs. Until known, time would not begin to run upon which laches could be predicated. Until these vital facts were made known, the plaintiffs, in common with all citizens within the city, would certainly be justified in assuming that any city improvement coming within their observation was one which the authorities had a lawful right to construct. Prima facie, at least, the actions of all public officers with respect to their official duties are supposed to be lawful, and are entitled to be so considered by all persons, until the contrary appears. It follows that plaintiffs are not shown to be at fault in their delay in bringing the action, and hence not shown to be guilty of laches.

The petitioners further contend that, while the illegality of the contracts in question might prevent a recovery in an action at law brought against the city by the contractors for their stipulated compensation for performing the work and furnishing the material for the plant, yet, nevertheless, in a case like this, where the city officers who are defendants are not resisting the payment of the contractors, but, on the contrary, are ready, willing, and anxious to pay them out of the public funds in the treasury of the city, that a court of equity ought not to enjoin such payment. We can conceive of nothing more detrimental to the public interests, and nothing more subversive of the established principles of law and justice, than the rule suggested; and we think no authority can be found to support any such rule. The logic of this contention is that in cases where city officers controlling the public funds have seen fit to enter into contracts in defiance of express charter provisions, and the contractors have performed the work, in whole or in part, it then should be left to the election of such officers to determine whether the public funds should or should not be unlawfully abstracted from the city treasury to pay such contractors, and that in such cases courts of equity should not be permitted to interfere with the plans of such officers by enjoining them from an unlawful disbursement of public money. But, accepting this as a proper exposition of the law applicable to such cases, what becomes of the restrictions which the legislature has seen fit to impose upon municipal officers by way of limiting their powers and regulating the manner of exercising such authority as has been conferred upon them by the legislature? Under the rule contended for, courts of equity must stand aside, and allow that which was unlawfully begun to be completed in defiance of the law. But, fortunately for the cause of law and good government the precise opposite is the settled practice of the courts. It is, and long has been, the conceded province of a court of equity to restrain the unlawful plans and

purposes of public officials in cases where the same threatened in large measure to dissipate the public funds. Such a case is clearly presented by the facts disclosed in the record before us.

The petition is denied. All concur.