O’NIELL, J.
Plaintiff sued to annul an alleged excessive assessment of the 10-miil parish tax levied for the year 1918. The complaint was that the tax was assessed upon a higher percentage of the cash valuation of the taxable property in the parish than was required to meet the budget of expenditures.
Plaintiff therefore prayed for an injunction to prevent the collection of the tax upon a higher percentage of the corporation’s property than was required to pay the company’s proportion of the estimated expendi-, tures of the parish.
The defendants admitted, in their answer to the suit, that the percentage adopted by the police jury as a board of reviewers, i. e., 45 per cent, of the cash valuation of the taxable property in the parish, would mate the avails of the 10-mill tax exceed the ■ budget of expenditures, but they averred that the necessary expenses of. the parish for the year 1918 had so far exceeded the estimate or budget that the avails of the 10-mill tax on 45 per cent, of the cash valuation would not exceed the actual expenditures for that year. Defendants denied that the facts alleged in plaintiff’s petition disclosed a cause or right of action.
The' case was submitted on a statement of facts, admitted by all parties, and judgment was rendered in favor of the defendants, rejecting plaintiff’s demand and dismissing the suit. Plaintiff has appealed, and, in answer to the appeal, the defendants have filed a special plea or exception of no cause or right of action.
There is no dispute about the facts of the case. The cash valuation of the taxable property in the parish, in the year 1918, was fixed at $35,287,416 by the board of state affairs, and that valuation was adopted by the police jury for assessment of local taxes.
The police jury met on the 6th of November, 1917, and adopted a budget or estimate of expenses of the year 1918, amounting to $134,000, including $40,000 for public schools, for which 3 mills of the 10-mill parish tax is appropriated by statute. On the 9th of October, 1918, the police jury met in regular session, and levied the 10-mill tax for that year, being the limit allowed by law. On the same day, the police jury, in session as a board of reviews, concurred in the cash valuation of $35,287,416, fixed by the board of state affairs, and then determined upon and adopted 45 per cent, as the proportion, for the purpose of assessment of local taxes, of the cash valuation fixed by the board of state 'affairs. The assessment of all taxable property in the parish was therefore fixed at $15,879,337.20, for local taxation. The cash valuation of plaintiff’s property was fixed at $916,895, and was therefore assessed at $412,602.75; that is, 45 per cent, of its cash value, for local taxes.
This suit was filed on the 30th of October, 1918, and service of citation was accepted on the following day, only 22 days subsequent to the proceedings complained of.
The 10-mill tax on 45 per cent, of $35,287,-416 amounts to $158,793.37; that is, $24,793.-37 more than the amount of expenditures budgeted by the police jury. The district judge, in his written opinion, recognized that the rate of the tax levied on the percentage of valuation adopted by the police jury would yield an excess _ revenue of $24,793.37 over the budget or estimate of *1071 expenditures for tlie year 1918; but be regarded the matter as of no importance, in view of his finding that the actual expenses of the parish would almost consume the revenues of that year. We do not concur in the conclusion either of fact or of law. It was admitted, on trial of the case, in November, 1918, that the cost of eradication of cattle ticks (a burden imposed upon the police juries by statute) had amounted to $27,-000 in the current year, and would cost $4,-000 more for the remaining part of the year. The expense of eradication of cattle ticks, for the year 1918, was estimated at $16,000, in the budget published in November, 1917. Hence it appears that there was a deficit of $15,000 in that estimate of expense. If, that deficit should be added to the $134,-000 budgeted, of course, the expenditures of the parish for the year 1918 would be $149,000; that is, only $9,793.37 less than the revenue to be derived from the ad valo-rem tax. It appears that the revenue to be derived from license taxes was not considerable, being' only about $500 per annum. But the budget contained an item “Fbr contingent fund, $22,000.” Without further explanation as far as the record shows, we assume that this $22,000 budgeted “for contingent fund” was intended to provide for any unforeseen expense that might arise, such as the extra cost of eradication of cattle ticks. On that presumption, and if no other unforeseen expense arose, the revenues derived from the ad valorem tax of 10 mills on an assessment at 45 per cent, of the cash valuation amounted to $31,793.37 more than the actual expenditures for the year.
[1,2] There-is ntf contest or dispute of the authority of the police jury to include in the budget of expenditures a reasonable amount as a contingent fund, to provide for any unforeseen expense that may arise, or for a failure to collect any part of the taxes levied. The objection is to the levying of a tax at such rate and on such percentage of valuation as to collect a revenue largely in excess of the total amount of expenditures appearing on the budget. Our opinion is that the complaint is well founded. Section 2745 of the Revised Statutes requires that the police juries, “before they shall fix and decide on the amount of taxes to be assessed for the current year, shall cause to be made out an estimate exhibiting the various items of expenditures; and shall cause the same to be published * * * at least thirty days before their meeting, to fix and decide on the amount of taxes to be assessed.” The making and publishing of such an estimate would.be a mere formality, and would -not be required, if police juries were permitted afterward to disregard it, or to levy taxes largely in excess of it. Our jurisprudence is consistent hi this, that the levy of a parish tax not preceded by a budget, published as required by the statute, is void and cannot be enforced. See Wilson v. Anderson, Tax Collector, 28 La. Ann. 261; Parish of Lincoln v. Huey, 30 La. Ann. 1244; Police Jury v. Bouanchaud & Co. (on rehearing), 51 La. Ann. 866, 25 South. 655; State ex rel. Hutchinson v. Lockett, Tax Collector, 52 La. Ann. 1622, 28 South. 157; Constant v. Parish of Bast Carroll, 105 La. 288, 29 South. 728; Fuselier v. St. Landry Parish, 107 La. 225, 231, 31 South. 678; Swords, Tax Collector, v. Daigle, 107 La. 510, 32 South. 94; Board of School Directors v. Police Jury of Iberia Parish, 123 La. 416, 49 South. 5; and Farmerville State Bank v. Police Jury of Union Parish, 138 La. 844, 70 South. 852.
[3] The lawmakers have recognized that an estimate of future expenditures is not apt to be accurate, and that the result of the collections and disbursements of each year is almost sure to be either a surplus or a deficit. Hence the law provides for either the expending of such surplus or the making up of such deficit. Section 2 of Act 32 of 1902 *1073 (page 39) provides that debts remaining unpaid from the revenues of any year may be paid out of any excess of revenues of a succeeding year, after payment of all statutory, necessary, and usual charges of such succeeding year, and that the police juries may even dedicate the excess of revenues of future years, beyond 10 years, provided such dedication, alone or with previous dedications remaining in force, shall not exceed the estimated excess of revenues over the statutory, necessary and usual charges of the year in which the dedication is made. See Murphy v. Police Jury of St. Mary Parish, 118 La. 411, 42 South. 982. But that does not mean that a police jury may arbitrarily levy such a rate of tax as will leave a large excess of revenue that has been neither budgeted nor dedicated to meet an expenditure, either certain or contingent. On the contrary, a deficit of one year, to be paid out of an excess of revenues over statutory, necessary and usual charges of a subsequent year, must be included in the budget or estimate of expenditures of such subsequent year; and so must any dedication of an excess of future revenues be included in the budget or estimate of expenditures of the year, the revenues of which are to bear such expenditure. In fact, the law requires that the budget shall he as accurate as the expenditures can reasonably be estimated, so that the taxpayers may be informed of the purposes for which they are compelled to contribute. See Parish of Lincoln v. Huey, supra, and Swords v. Daigle, supra.
It was admitted in the statement of facts on which this case was submitted, and is a simple mathematical calculation, that the 10-mill tax on a valuation of 38 per cent, would produce the estimate of expenditures for the year 1918. Therefore, on the same principle that would have prohibited the police jury from adopting a valuation of 75 or 100 per cent., it was illegal to adopt a valuation of 45 per cent., or any valuation above the requirement of 38 per cent.
[4] The plea or exception of no cause or right of action is based upon two propositions advanced by defendants, via: (1) That plaintiff has no interest in demanding a reduction of the percentage of valuation except as to the property assessed to plaintiffJ, and (2) that a reduction in the percentage of valuation of plaintiff’s property alone would destroy the equality and uniformity in the rate of taxation, and thereby violate article 225 of the Constitution. The argument is unsound, for it denies the right of each and every taxpayer to contest an excessive rate of taxation. Under the new system of assessment for taxes on a percentage of actual cash valuation, the percentage of valuation and the rate of the tax are countervailing factors in determining the amount of revenue to be derived. A tax of 10 mills on a valuation of 45 per cent, is the same as a tax of 5 mills on a valuation of 90 per cent. A taxpayer has the same right to complain of an excessive percentage of valuation under the new system of assessments that he had to complain of an excessive rate of taxation under the old system. It can hardly be doubted that each and every taxpayer would have had cause to complain if the police jury had levied the 10-mill tax on a valuation of 100 per cent., so as to collect $352,874.16, or $218,874.16 more than the budget called for. That is what the police jury might have done, if defendants’ argument is sound. Of course, the percentage of valuation adopted by the police jury must be uniform with regard to the valuation of all taxable property in the parish. Although no taxpayer has a cause or right of action to champion the right of another taxpayer, each taxpayer has a right of action to contest an excessive percentage of valuation, as far as his property is affected. What effect a reduction of the percentage in favor of the complaining *1075 taxpayer will have upon those who have paid the tax without protest is a matter which we are not now called upon to decide. An appropriate ruling, however, may. be found in Fuselier v. St. Landry Parish, 107 La. 221, 31 South. 678.
The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the 10-mill tax assessed against appellant’s property, for the year 1918, be annulled in so far as the assessment exceeds 38 per cent, of the cash valuation of -$&1G>895, to which extent the tax and assessment are decreed valid. It is therefore ordered that the tax collector be enjoined not to collect the tax on appellant’s property in excess of $3,484.20.