[L. A. No. 15560.   In Bank.—November 18, 1935.]

ALICE CLARK RYAN, Petitioner, v. H. L. BYRAM, Tax Collector, etc., Respondent.

Holbrook, Taylor, Tarr & Reed, David E. Hinckle, W. Sumner Holbrook, Jr., and John Harlan Dawson for Petitioner.

Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Respondent.

THE COURT.—This is a proceeding in mandate to compel respondent, as tax collector, to issue receipted tax bills to petitioner upon payment to respondent of a sum less than the amount claimed by respondent to be due for taxes for the tax year 1935–1936. It is the theory of petitioner that certain portions of the tax levied by the board of supervisors for Los Angeles County and for the Los Angeles County Flood Control District for 1935–1936 are invalid. Petitioner contends that the county levy is based on an allowance of over six million dollars for unappropriated and general reserves and a fund for estimated delinquencies for which an appropriation was never validly made, and that the flood control district levy is based on an allowance of over two million dollars for unappropriated and general reserves, for which an appropriation was never validly made. The board levied a tax for county purposes of $1.19 per hundred dollars of assessed valuation, and for flood control district purposes of $0.19 per hundred. It is stipulated that if the above items should be deleted, the rate would be $0.98 and $0.08, respectively.

For a proper understanding of the points made, it is necessary to review in detail the facts leading to the two levies. On or about July 30, 1935, the board of supervisors of Los Angeles County adopted a preliminary budget. In this preliminary budget it was proposed that there be allowed for county purposes $700,000 for unappropriated reserves and

$5,619,000 for general reserves, the last item to be divided between various designated funds. The preliminary budget also proposed an allowance of $250,000 for unappropriated reserves and $1,652,680.90 for general reserves for the flood control district.

Pursuant to Political Code section 3714, notice of the adoption of the preliminary budget was properly published and notice properly given that hearings would be held by the board, beginning August 15, 1935, at which time taxpayers would be permitted to express their views for or against the inclusion of budget items. Hearings were thereupon held over a period of several weeks. During these hearings, unappropriated and general reserves were fully discussed, as well as an allowance for anticipated delinquencies, and some items in reference thereto definitely passed upon by resolution. On August 31, 1935, at 12:45 A. M., the board passed a resolution purporting to adopt the budget as finally approved. This resolution, due to exigencies of time, omitted any itemization of departmental appropriations and was incomplete in other important respects. The resolution, after setting forth certain purely formal matters, recited that:

"Now, Therefore, Be It Resolved that the Board of Supervisors, having concluded said hearing, does hereby adopt the said budget and does hereby finally determine and fix each and all of the items of said completed budget as therein set forth, and it is ordered that a copy of said completed budget be filed in their office; said budget being in words and figures following, to-wit:"

There followed, in the resolution, a general summary of the departmental appropriations, which summary had the following totals:

| | |
|---|---|
| General county funds | $36,675,579.57 |
| Special county funds | 8,323,318.32 |
| Special district funds | 7,580,061.92 |
| Grand total | $52,578,959.81 |

Under the special district funds, the appropriation for the flood control district was listed as $4,613,539.84.

It will be noted that this summary fails to list any appropriation for unappropriated or general reserves for either the county or the flood control district, and is also silent as to any appropriation for the county for anticipated tax delinquencies.

On the evening of August 31, 1935, the board passed the 1935–36 tax levy resolution. So far as pertinent here, the resolution set forth a rate of $1.19 per $100 of assessed valuation for county purposes and $0.19 per $100 for flood control district purposes. These levies were based upon computations made by the auditor as disclosed by his extension sheet. As therein indicated, the auditor had taken the totals of the departmental appropriations, as shown in the above-mentioned summary, and had added thereto certain sums for reserves for the county and for the district and, in the case of the county, had added 10 per cent for estimated delinquencies in tax collections. These sums were arrived at by adding to the departmental appropriations for the above-mentioned purposes an amount in excess thereof that would be raised by the above-mentioned rates, which rates had been previously agreed to by the board. In the case of the county, this added sum was $6,613,151.97 and, in the case of the flood control district, this added sum was $2,198,259.24.

On September 4, 1935, the deputy county counsel presented and explained to the board another budget resolution and suggested that it readopt and ratify the budget. It was explained to the board that the resolution passed on the morning of August 31st was not complete. This resolution was passed. It contained a complete itemized budget and included appropriations for reserves and anticipated delinquencies in tax collections in exact accord with the amounts set forth in the auditor's extension sheet. The itemization of the various appropriations required over 50 pages.

It is petitioner's contention that, under section 3714 of the Political Code, the adoption of a budget is a condition precedent to the adoption of a tax levy; that the resolution of the morning of August 31st fixed the budget as therein provided; that the tax levy, in so far as it will raise amounts in excess of the amounts therein provided, is invalid; that the resolution of September 4th was totally ineffective to add to the budget items not contained in the resolution of August 31st. It is stipulated that, if petitioner is correct, the tax rate for the county should have been $0.98 per hundred dollars of assessed valuation in place of the $1.19 rate as fixed and, for the flood control district, $0.08 in place of the $0.19 rate.

Section 3714 of the Political Code provides a complete statutory method for the adoption of a budget and for the levying

of county and special district taxes. So far as pertinent here, it provides that before July 10th of each year each county official or department shall file with the auditor an itemized estimate of receipts and expenditures for the fiscal year; that from such estimates the county auditor shall prepare a tabulation showing the proposed complete expenditure program of the county and special districts for the fiscal year; that such tabulation shall be submitted by the auditor to the board of supervisors on or before July 30th of each year; that the board shall thereupon consider such tabulation in detail and shall, on or before August 10th, revise, reduce or add to any of the items, if it be so advised; that the board may, if it deem it advisable, set a portion of each fund aside for unappropriated reserves which shall not exceed 10 per cent of the total amount of such fund; that said budget "shall contain an amount or amounts to be known as a general reserve or 'general reserves' . . . in such sum or sums as the county boards of supervisors shall deem sufficient"; that those tabulations by the board shall constitute the "preliminary county budget for the fiscal year"; that on or before August 10th the preliminary budget shall be printed and copies made available to any taxpayer that desires the same; that notice of the preparation of the preliminary budget shall be published in a paper of general circulation at least once, which notice shall recite the date at which the board will conduct hearings for fixing the final budget; that on or before August 20th the board shall meet as stated in the notice, at which time any taxpayer may appear and be heard for or against any part of the budget; that such hearing may be continued from day to day for not to exceed ten days. Up to this point, the board strictly complied with every provision of the section and hearings were held as therein provided. The section then provides:

"Upon the conclusion of such hearing but not later than the thirtieth day of August of each year at such time as the county board of supervisors may direct, said board shall by resolution, adopt the budget as so finally determined, . . . and shall file in their offices a copy of the completed budget. The several amounts specified in the resolution as finally enacted, shall be and become appropriated for the several offices, departments, services, institutions or districts, for the fiscal year to which the budget is intended to apply; . . .

"The county board of supervisors shall, not later than the first day of September, fix the rates of county and district taxes designating the number of cents levied for each fund upon each one hundred dollars of assessed value of the county for the current fiscal year to raise the amount of the estimated expenditures as finally determined, . . . and the tax for county and local purposes shall not exceed the amount specified in the budget, after allowing for delinquency as provided in law; . . . ''

The petition herein alleges that when the above provisions are applied to the facts involved herein, the following conclusions are necessary:

1. Jurisdiction of the board over the budget ceased with the adoption of the budget resolution of August 31st; that

2. The September 4th resolution was contrary to the notice of hearing given on August 3d; that

3. The September 4th resolution was contrary to the provisions of section 3714 in that it was adopted later than August 30th and was adopted subsequent to the adoption of the tax levy and not prior thereto; that

4. The September 4th resolution enlarged the proposed budget for 1935–36 by over eight million dollars, without notice to the taxpayers.

Fundamentally, it is petitioner's contention, as already stated, that, under section 3714, *supra*, the adoption of a budget is essential to a valid tax levy; that the resolution of August 31st limited the budget to the amounts therein specified; that the tax levy of August 31st is invalid in so far as it will raise funds in excess of those set forth in the budget resolution; and that the resolution of September 4th was totally ineffective for any purpose.

■ We agree with petitioner that, under the provisions of section 3714, *supra*, the board must adopt a budget as a condition precedent to a valid tax levy. We further agree with petitioner that a levy based on items not included within a previously approved and adopted budget is invalid to the extent that it includes items not part of the budget. (*Hellman* v. *City of Los Angeles*, 147 Cal. 653 [82 Pac. 313]; *Vernon Parish Lumber Co.* v. *Word*, 146 La. 1068 [84 So. 358]; *Engstad* v. *Dinnie*, 8 N. D. 1 [76 N. W. 292]; *People* v. *Day*, 277 Ill. 543 [115 N. E. 732].) ■ However, we think that the record in this case fairly indicates that prior to August 31st

the board had agreed upon the inclusion of all the disputed items, although in some cases the exact amounts had not been computed, and that the resolution of August 31st was incomplete and did not properly reflect the board's intention. We are further of the opinion that the resolution of September 4th was intended to correct the resolution of August 31st and to make it speak the board's true intentions, as indicated by its prior actions. The board, in our opinion, had the power to correct its former resolution in this manner. ■

Petitioner relies upon the well-settled rule that all proceedings in the assessment of property for taxation and all proceedings in the levying and collection of taxes are *in invitum*, and are to be strictly construed in favor of the taxpayer. Petitioner further contends that under this rule all of the time limit provisions in section 3714 are mandatory and that, after the time therein fixed has elapsed, the board is without jurisdiction to further proceed. Under this theory, the resolution of September 4th would be, as petitioner claims, a nullity. We are not in entire accord with petitioner. It is a well-settled rule of construction, applicable to tax statutes, that only those provisions enacted for the benefit of the taxpayer are mandatory, while provisions enacted to secure the orderly conduct of business are merely directory. Cooley, in his well-known work on Taxation (fourth edition), section 510, states the rule, amply supported by authorities, as follows:

"All the provisions of a statute not on their face merely permissory or discretionary are intended to be obeyed, or they would not be enacted at all; and therefore they come to the several officers who are to act upon them, as commands. But the negligence of officers, their mistakes of fact or of law, and many other causes, will sometimes prevent a strict obedience, and when the provisions which have been disregarded constitute parts of an important and perhaps complicated system, it becomes of the highest importance to ascertain the effect the failure to obey them shall have on the other proceedings with which they are associated in the law. The form the question most commonly assumes is this: Some official act which the law provides for, and which constitutes one step to be followed by others in reaching a specified result, having failed to be taken, does the authority to proceed toward the intended result terminate when that particular step has been neglected, or may the proceeding go on to a conclusion, treat-

ing the neglect as immaterial? If the proceeding fails at that point, the requirement of the official act which has been neglected is said to be mandatory, but if it may still proceed, the requirement is directory only; that is to say, the law directs that particular act to be performed, but does not imperatively command it as a condition precedent to anything further.''

Cooley then points out that, of course, the phraseology of the statute involved may settle the question, gives some examples, and then continues:

''It is not often, however, that these or similar words are met with in the statutes which define official duties under the revenue laws, and the construction of particular provisions must be left for determination in such light as the obvious purpose they were intended to accomplish may afford. And that purpose, it would seem, ought generally to be conclusive. No one should be at liberty to plant himself upon the nonfeasances or misfeasances of officers, under the revenue laws, which in no way concern himself, and make them the excuse for a failure on his part to perform his own duty. On the other hand, he ought always to be at liberty to insist that directions which the law has given to its officers for his benefit shall be observed. Many eminent judges have endeavored to lay down a general rule on this subject, by which the difficulties in tax cases may in general be solved. In one of the cases in which this has been attempted the general doctrine is stated as follows: 'There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power, or render its exercise in this regard of the requisitions ineffectual. Such generally are regulations designated to secure order, system, and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory, unless accompanied by negative words, importing that the act required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed, or the acts done will be invalid. The

power of the officer in all such cases is limited by the measure and conditions prescribed for its exercise.' (*French* v. *Edwards,* 80 U. S. 506, 511 [20 L. Ed. 702].)

"The same rule in nearly the same terms has been laid down in other cases, and it seems a sound and just rule, and may reasonably be believed to be in accord with the legislative will in the cases to which it is applicable. All legislation must be supposed to take into account the possible, if not probable, mistakes and irregularities of officers in executing the provisions of the law, and it is hardly reasonable to infer an intent, on the part of a legislative body, that a failure of administrative officers to comply with any provision made for the benefit of the state exclusively, or merely as a guide in orderly proceedings, should deprive the state of all benefit to be derived from a compliance with other provisions that embody the main purpose and object of the law."

(See, also, *Tallon* v. *Vindicator etc. Co.,* 59 Colo. 316 [149 Pac. 108]; *Beirl* v. *Columbia County,* 73 Or. 107 [144 Pac. 457].) This rule of construction has been substantially codified in this state by section 3885 of the Political Code, which provides:

"No assessment or act relating to the assessment or collection of taxes is illegal on account of informality, nor because the same was not completed within the time required by law."

Petitioner contends that the above section applies only to the assessment of property and the collection of taxes and does not apply to informalities in the levying of a tax. In support of this contention, petitioner relies on certain *dicta* found in the case of *People* v. *Central Pacific R. R. Co.,* 83 Cal. 393 [23 Pac. 303]. At page 400 of that opinion the following statement in reference to section 3885, *supra,* is found:

"It will be observed, also, that the section quoted refers to informality in the matters of *assessment* and *collection* only. The statute nowhere waives informality in the matter of *levy* of the tax."

The above-quoted language certainly supports petitioner's contention, but, in our opinion, such language was not necessary to the opinion, was merely *dicta,* and incorrectly interprets the section. The case in which the language is found was an action by the state to recover taxes alleged to be due the state and to various counties. There was no allegation in the complaint that a tax had ever been levied by the state. In up-

holding the action of the trial court in sustaining a demurrer to the complaint, and in holding that section 3885 could not cure the total absence of a levy, the court stated:

"That an assessment shall not be invalid because of some informality does not excuse the total want of assessment. There can be no assessment unless there is some property assessed, and to be assessed there must be some attempt at description of the property. At least, its general character must be shown, and its *situs* must be shown within the state or the county where assessed. It will be observed, also, that the section quoted refers to informality in the matters of *assessment* and *collection* only. The statute nowhere waives informality in the matter of *levy* of the tax. There is no tax until one is levied, and a complaint shows no indebtedness for taxes unless it shows the levy of a tax. In this complaint there is no intimation that a tax, either state or county, was ever levied."

It is obvious that the sole question involved in that case was the effect of the failure to allege that any levy had ever been made. No question of informality in a levy was involved. Whatever was said on that point was clearly *dicta.* We think that section 3885, *supra,* is applicable, not only to informalities in the process of ascertaining the value of property for tax purposes, and in the collection of taxes, but is also applicable to informalities in the levying of the tax and proceedings incidental thereto. The word "assessment" is used twice in the section. As used the second time, it is our opinion that the term is broadly used so as to include the entire statutory method of imposing taxes, including the levy of taxes. In 5 Corpus Juris, page 816 et seq., it is pointed out that the term "assessment" can have various meanings. It is then stated, the text being amply supported by authority, that:

"As the word is more commonly employed, an assessment consists of the two processes of listing the persons, property, etc., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them; the designation of the person or things which shall be the subject of taxation and the apportionment of taxation among such persons or things in the ratio prescribed by law; the procedure on the part of the officials by which property is listed, valued, and finally the *pro rata* declared; not merely the valuation of the property for taxation, but the whole statutory mode of

imposing the tax, embracing all the proceedings for raising money by the exercise of the power of taxation from their inception to their conclusion.''

We think this second broad meaning should be accorded the term as used in section 3885.

■ Applying these rules of construction to section 3714, *supra*, we are of the opinion that the provisions for preparing a preliminary budget; for its printing and publication; for the giving of notice and the holding of hearings; and for the adoption of a budget before the tax rate is fixed are all for the benefit of the taxpayer, are mandatory, and that, if any of these steps had been omitted, the tax levy would be invalid.

■ But here the preliminary budget was prepared, it was printed and published, notice was given and hearings held. As will later appear, the board, prior to August 31st, had determined to include in the budget appropriations for the items here in dispute. All that the board failed to do, as required by section 3714, was to have the formal resolution approving the budget properly express its previously expressed intention. This it attempted to do by the corrective resolution of September 4th. We think that the time limit provisions of section 3714 do not require us to hold that the board had no power to thus correct its mistake of August 31st.

As already stated, prior to August 31st, the board had discussed the items here in dispute, and had agreed that appropriations therefor should be included in the budget. As to several of the items, the exact amount had been determined and agreed upon, while, as to the others, the exact amount was uncertain, depending upon mathematical calculations by the auditor. The proceedings of the board, so far as pertinent here, are set forth in exhibits to the petition. It therein appears that on July 30th, 1935, the board adopted a preliminary budget, complete in all details and containing allowances for the items here in dispute. In that budget, it was proposed that an unappropriated reserve fund for the county of $700,000 be provided. It was also proposed to provide a general reserve for the county of $5,619,000, divided between reserves for the general fund, the salary fund, and three designated interest and sinking funds. The preliminary budget also provided for a fund of $250,000 for unappropriated reserves for the flood control district and a general reserve of $1,652,680.98.

During the course of the hearings on the budget, it developed that many departments had included within their requests proposed expenditures for automotive equipment. After considerable discussion, by formal resolution, it was determined to strike from each department's budget all allowances for automobiles, to aggregate the sums so stricken, and to add this sum to the unappropriated reserves, which had been fixed in the preliminary budget at $700,000. It was later determined that the sum to be added to the unappropriated reserves for this purpose was $80,000.

The record shows that the board held numerous hearings and arrived at the various departmental appropriations. The board then held an extended hearing on the question of reserves. A reading of the record indicates that the five members of the board were of the opinion that before fixing the appropriations for these purposes, they should first determine the tax rate, apply that rate to the assessed valuation, deduct from the amount so raised the departmental appropriations, and divide the balance between the various reserve funds. This method of fixing the reserves may not, from an accounting standpoint, be sound, but there is no principle of law which prevents this method being employed. From the record, it appears that the chairman of the board wanted a rate of $1.18; Supervisor Jessup wanted a rate of $1.20; Supervisor McDonough thought the reserves could be cut to fit a $1.18 rate; Supervisor Quinn believed that safety required a $1.26 rate; while Supervisor Ford was of the opinion that the rate should be between $1.18 and $1.20. Although no formal resolution was passed on the subject, it is quite clear from the record that a majority of the board, after considerable discussion, agreed upon a $1.19 rate. Towards the close of the discussion, a formal resolution was passed fixing a portion of the general reserves at $2,175,000, divided between the salary fund and the general fund.

As to the 10 per cent allowance for anticipated tax delinquencies, it is stipulated that in 1932–1933, the delinquencies amounted to 12.70 per cent; in 1933–1934, to 11.55 per cent; in 1934–1935, to 9.97 per cent. These facts were explained to the board. The preliminary budget contained no allowance for this item. The auditor explained to the board at length that this was because in fixing the allowance for reserves in the preliminary budget, he had made them large

enough to absorb these anticipated delinquencies. When the board determined to pare the reserves, it was obvious that some allowance for this item would have to be made. Although the record is not as clear as might be desired on this point, it fairly appears that prior to August 31st the board determined to make a 10 per cent allowance for this item.

There is no ambiguity at all as to the allowance of reserves for the flood control district. While its appropriation was under discussion, the flood control engineer was ordered by the board to pare his budget so as to bring the expenditures within the amount that could be raised by a $0.19 rate. Pursuant to this order, an amended budget was filed showing expenditures to fit the $0.19 rate. The amended budget so filed was by formal resolution approved.

It thus appears that as to the flood control district, the board formally approved, before August 31st, a budget containing expenditures requiring a $0.19 rate. As to the county, it appears that prior to August 31st, the board knew and had determined that some allowances for reserves and anticipated delinquencies had to be made. The amount for each item had not been definitely fixed, except that they should not exceed the amount, after deducting the departmental appropriations, that would be raised by a $1.19 tax rate. The exact allowances depended upon mathematical calculations and division between the various funds. Under such circumstances, the resolution of August 31st, approving the budget was drawn up. When the board met on the evening of August 30th (the last day to approve the budget, under section 3714), no formal resolution approving the budget had been prepared. At 12:10 A. M., after an evening of strenuous discussion, the board recessed to have the resolution drafted. At 12:45 A. M., the hastily drawn, incomplete, and skeleton resolution was submitted to the board and passed. This skeleton resolution, aside from its purely formal recitations, contained a mere summary of the departmental appropriations, was clearly incomplete, and did not reflect the true intent of the board, as shown by its prior determinations. The board then adjourned. In the meantime, the auditor had made the necessary calculations. The county tax rate was then fixed at $1.19 and the flood control district rate at $0.19, as previously agreed. The auditor's extension sheet, submitted to the board, set forth in detail the amounts allocated to the items here in

dispute. On September 4th, the board met again. A deputy county counsel explained to the board that the resolution of August 31st was not complete. It was recommended to the board that it should "re-adopt" and "ratify" the resolution of August 31st "as now complete . . . the itemizations having since been inserted". This recommendation was followed. It is quite clear from the record that the resolution of September 4th was intended by the board to cure the omissions in the resolution of August 31st. The resolution of September 4th was not an attempt to redetermine the items to be inserted in the budget, nor was it an attempt to insert new items not provided for prior to August 31st, a power it did not possess. It is our opinion that the resolution of September 4th was simply a resolution designed to supply the matters omitted, because of exigencies of time, from the resolution of August 31st. It was simply an attempt to make the record speak the truth. ■ The cases are clear that, under such circumstances, the board had the power, and it was its duty to correct the resolution so as to make the record accord with the previous determination of the board. (*Golden State Milk Products Co.* v. *Southern Sierras Power Co.,* 117 Cal. App. 121 [3 Pac. (2d) 352]; *People* v. *Wabash R. Co.,* 314 Ill. 513 [145 N. E. 733]; *First National Bank* v. *Isaacs,* 161 Ind. 278 [68 N. E. 288]; *Kershaw* v. *City of Willamina,* 119 Or. 543 [250 Pac. 235]; *Webb* v. *Strobach,* 143 Mo. App. 459 [127 S. W. 680].)

For the foregoing reasons, we find that the two levies of August 31, 1935, here challenged, are valid, and that the petition for the peremptory writ of mandate should be denied.

It is so ordered.

Rehearing denied.