(86 N. W. Rep.. 723.)

---

LEE A. ROBERTS, *et al vs.* CITY OF FARGO, *et al.*

Opinion filed April 25, 1901.

**Municipal Corporations—Contracts—Street Lighting—Appropriations—Tax Levy—Necessity—Ultra Vires—Unlawful Disbursements—Taxpayer's Action—Injunction.**

On August 6, 1895, in pursuance of a resolution adopted by the city council of the city of Fargo, certain officers of the city signed a written agreement, in which the city of Fargo was described as party of the second part, and the Fargo Gas & Electric Company, a private corporation, was described as party of the first part, and whereby the city agreed to pay said corporation, in consideration of certain electric light agreed to be furnished for lighting the city, the sum of $500 per month for the period of 10 years from and after August 19, 1895, at which date the contract, by its terms, took effect. Previous to signing said written agreement, no appropriation had ever been made or tax levied by the city council to meet the expenditures required to be made by the city in carrying out the agreement, or any part of such expenditures. *Held*, construing § § 2261, 2264, Rev. Codes 1895, that said agreement was ultra vires, and void. *Held* that, inasmuch as said agreement involved the dissipation of public funds in large amounts, without authority of law, and in violation of law, an action will lie in behalf of a taxpayer to enjoin such unlawful disbursements.

**Previous Appropriation to Meet Municipal Expenditure.**

*Held*, that the provisions of § 2264, supra, are mandatory and prohibitive, and that no contract requiring a disbursement of city funds can be made by the city council, and no expense can be incurred by any city officer or officers, unless a previous appropriation has been made covering the expense involved in the same.

**Notice of Limitation of Corporate Powers.**

*Held*, further, that all persons entering into contractual relations with public corporations or their officers are chargeable with notice of their powers and the limitations upon their powers.

Appeal from District Court, Cass County; *Pollock, J.*

Action by Lee A. Roberts and others against the city of Fargo and others to enjoin defendant from disbursing its funds in payment of street lighting under an alleged ultra vires contract. From a judgment dismissing the bill, plaintiffs appeal.

Reversed.

*Ball, Watson & Maclay,* for appellants.

Appellants are entitled to maintain this action. *Engstad* v. *Dinnie,* 8 N. D. 1; *Mock* v. *Santa Rosa,* 58 Pac. Rep. 826. No appro-

priation concerning the expenditure to be incurred under the contract was previously made by the city council. § § 2262, 2264, 2190, Rev. Codes, *Pryor* v. *Kansas City,* 54 S. W. Rep. 504; *Blair* v. *Lantry,* 31 N. W. Rep. 790; *Rubber Co.* v. *Village,* 59 N. W. Rep. 513; *McElhinney* v. *City,* 49 N. W. Rep. 705; *City* v. *Waterworks Co.,* 76 N. W. Rep. 906; *City* v. *Downing,* 81 N. W. Rep. 509; *Garrison* v. *Chicago,* 7 Biss. 480; *Smith Canal Co.* v. *City,* 36 Pac. Rep. 844; *Gas Co.* v. *Leadville,* 49 Pac. Rep. 268; *Indianapolis* v. *Wann,* 42 N. E. Rep. 901; *Putnam* v. *City,* 25 N. W. Rep. 330; *Tenant* v. *Crocker,* 48 N. W. Rep. 577; *City* v. *Norton,* 63 Fed. Rep. 357; *Kiichli* v. *Minneapolis,* 59 N. W. Rep. 1088; *City* v. *Land,* 35 At. Rep. 136; *Jutte* v. *Altoona,* 94 Fed. Rep. 61; *Bladen* v. *Philadelphia,* 60 Pa. St. 464; *Philadelphia* v. *Flannigan,* 47 Pa. St. 21; *Kingsland* v. *Mayor,* 5 Daly, 448; *Weigel* v. *County,* 32 S. W. Rep. 116; *City* v. *Dessaint,* 9 S. W. Rep. 593; *Rubber Co.* v. *City,* 56 S. W. Rep. 220; *City* v. *Laurant,* 23 So. Rep. 185; *Irrigation District* v. *McNeal,* 83 N. W. Rep. 847; *Engstad* v. *Dinnie,* 8 N. D. 1. The financial system mapped out by the statutes of North Dakota for the government of its cities, does not permit the making of contracts for longer than one year, for the reason that appropriations can be made only for the expenses of one year; and no contract can be made until the corresponding appropriation therefor has also been made. *State* v. *Bayonne,* 26 At. Rep. 81; *State* v. *Medberry,* 7 O. St. 522; *Findlay* v. *City of Pendleton,* 56 N. E. Rep. 649; *Kitchli* v. *Minneapolis,* 59 N. W. Rep. 1088; *City* v. *Waterworks Co.,* 32 S. E. Rep. 907. Authority to make contracts cannot be implied under the terms of § § 2261 to 2264, Rev. Codes. In the face of the language used, mere implied authority would not be sufficient. *Kiichli* v. *Minneapolis,* 59 N. W. Rep. 1088; *City* v. *Waterworks Co.,* 76 N. W. Rep. 908; *Gas Co.* v. *Leadville,* 49 Pac. Rep. 268. There can be no estoppel in the case of contracts such as the one in question. *Engstad* v. *Dinnie,* 8 N. D. 11; *Goose River Bank* v. *Township,* 1 N. D. 28; *State* v. *Getchell,* 3 N. D. 243; *Farmers' Bank* v. *School District,* 6 Dak. 255; *McDonald* v. *Mayor,* 68 N. Y. 23; *Rubber Co.* v. *Village,* 59 N. W. Rep. 513; *San Diego Water Co.* v. *City,* 59 Cal. 517; *McBrien* v. *City,* 22 N. W. Rep. 206; *Canal Co.* v. *City,* 36 Pac. Rep. 844; *Indianapolis* v. *Wann,* 42 N. E. Rep. 904; *City* v. *Land,* 35 At. Rep. 136; *District* v. *McNeal,* 83 N. W. Rep. 847.

*Newman, Spalding & Stambaugh,* for respondent.

The city has power to provide for lighting its streets. § 2148, Subd. 1, Rev. Codes. The authority conferred by this section is unlimited by any conditions, restrictions or limitations, and may be exercised by the council in its discretion as to its mode, manner or detail; and such discretion cannot be questioned by the taxpayer. *Connery* v. *Company,* 7 So. Rep. 8. If the contract was voidable as to certain portions of it, the city might either ratify it or avoid it; and it can only be voidable as to those portions which were executory.

*East St. Louis* v. *Gas Light Co.,* 98 Ill. 415; *Columbus Water Co.*
v. *Columbus,* 28 Pac. Rep. 1097. The contract in question is neither
void nor voidable, but valid in its entirety and for its full term.
*Seitzinger* v. *Tamaqua,* 41 At. Rep. 454; *Bailey* v. *Philadelphia,* 39
At. Rep. 494; *City of Hartford* v. *Co.,* 32 At. Rep. 925; *New Or-
leans Gas Co.* v. *New Orleans,* 7 So. Rep. 559; *Illinois Trust Co.*
v. *Arkansas City,* 40 U. S. App. 257; *City of Indianapolis* v.
*County,* 66 Ind. 396; *City* v. *Gardner,* 97 Ind. 1; *City* v. *Gaslight
Co.,* 31 N. E. Rep. 573; *City* v. *Water Co.,* 172 U. S. 1. No ex-
pense under the contract in question is or can be incurred until an
indebtedness arises, then an annual appropriation is sufficient for
the purposes of the contract, as no indebtedness arises under it until
the company has furnished the city with the lights contracted for,
for the full term of one month at a time. The indebtedness, in
other words, accrues monthly and the expense is incurred monthly
and no appropriation is necessary other than the regular appro-
priations for regular expenses of the city, the lighting of the streets
being an ordinary current expense. *Carlisle* v. *City,* 29 N. E. Rep.
556; 141 Ill., 445; *Defiance Water Co.* v. *Defiance,* 90 Fed. Rep.
753; *Hill* v. *Indianapolis,* 92 Fed. Rep. 467; *Monroe Water Co.* v.
*Heath,* 73 N. W. Rep. 234; *Black* v. *City,* 34 At. Rep. 354; *Wade* v.
*Oakmont,* 30 At. Rep. 959; *Capital City Water Co.* v. *Montgomery,*
9 So. Rep. 343; *New Orleans Gas Co.* v. *New Orleans,* 7 So.
Rep. 559; *McLean* v. *Frence,* 44 Pac. Rep. 358; *Utica* v. *Utica Co.,*
31 Hun. 430; *Merrill Ry. Co.* v. *Merrill,* 49 N. W. Rep. 965;
*Weston* v. *Syracuse,* 17 N. Y. 110; *Valparaiso* v. *Gardner,* 97 Ind.
1, 49 Am. Rep. 416; *East St. Louis* v. *Gaslight Co.,* 98 Ill. 415;
*Smith* v. *Dedham,* 10 N. E. Rep. 782; *Crowder* v. *Sullivan,* 28 N.
E. Rep. 94; *Salino* v. *Neosho,* 30 S. W. Rep. 190; *Grant* v. *Daven-
port,* 36 Ia. 365; *Lott* v. *Waycross,* 11 S. E. Rep. 558; *Burlington
Water Co.* v. *Woodard,* 49 Ia. 58; *Walla Walla* v. *Walla Walla Co.,*
172 U. S. 1. The contract in question provides that in each year the
city shall appropriate and levy a sufficient sum to pay the expenses
under the contract, and this agreement is valid, binding and en-
forceable. *Monroe Water Co.* v. *Heath,* 72 N. W. Rep. 234.

WALLIN, C. J. The record in this action discloses the following
facts: The plaintiffs, who are freeholders and taxpayers residing in
the city of Fargo, bring this action to annul a certain contract in
writing made on August 6, 1895, between said city of Fargo and
the defendant the Fargo Gas & Electric Company, whereby the lat-
ter agreed to furnish electric light for lighting said city for a period
of 10 years upon certain terms set out in said contract. The city
of Fargo at all times in question was, and still is, a municipal corpo-
ration organized under Chap. 28 of the Political Code. See Rev.
Codes 1895, § § 2108-2343. The mayor, treasurer, and auditor
of said city are also made parties defendant. The Fargo Gas & Elec-
tric Company is a private corporation, formed for the purpose of
manufacturing and selling gas and electricity, and having its princi-

pal office in said city of Fargo. The complaint sets out the contract in question as follows: "This contract, made and entered into pursuant to resolution of the city council of the city of Fargo adopted May 5, 1895, this 6th day of August, 1895, by and between the Fargo Gas & Electric Company, a corporation organized and doing business under the laws of the state of North Dakota, party of the first part, and the city of Fargo, party of the second part, witnesseth: The party of the first part, for and in consideration of the sum of five hundred dollars ($500) per month, to be paid monthly by the party of the second part, agrees to furnish to the party of the second part for the term of ten years from and after the 19th day of August, 1895, with fifty arc electric lights of 2,000 candle power each, to be kept burning each and every night during said term of ten years from dark until daylight: provided, that a pro rata reduction shall be made in any month for the number of hours any light or lights shall fail from accident or any other unavoidable cause to be kept burning as herein stated; such failures not to work a forfeiture of this contract. But if the party of the first part shall refuse upon reasonable notice to keep said lights burning as previously agreed for a longer term than is reasonably necessary to make any necessary repairs for that purpose and to put said lights in order, then said party of the second part may, at its option, cancel this contract. Said party of the first part shall suspend such of said lights as are not now in use under its present contract with said second party at such points upon the public streets of said city within a reasonable radius as shall be directed by said second party as soon as practicable, and, in case said lights are not so suspended on or before the 19th day of August, then the pro rata reduction hereinbefore provided for shall be made for all such lights as shall not then be ready for use until the same are in actual use. Said lights shall be suspended in the same manner as those now in use, and on Broadway and Front S. shall be placed not less than twenty-five, and on all other streets not less than thirty-five, feet above the surface of the street. Said party of the first part further agrees to furnish to said party of the second part such lights as it may order in excess of said fifty lights at the rate of $120.00 per year in addition to said $500.00 per month agreed to be paid for said fifty lights. Said party of the second part agrees during the term of this contract to take and use not less than said fifty lights, and in each and every year to appropriate and levy a sufficient sum to meet the requirements of this contract, and to pay the price herein agreed on for all lights used hereunder each month at the monthly meeting of the city council. It is further agreed that, in case of removal of any light or lights from one place to another after the same shall have been located and suspended, said city shall pay the actual and necessary expense for such removal to the party of the first part. It is further agreed that the party of the first part shall furnish to the party of the second part at the waterworks and city buildings of the party of the second part twenty-five 16 candle power

incandescent lights, twelve of which shall be all-night lights; all to be-located as directed by the party of the second part; said lights to-be furnished for the full period of said ten years,—in consideration of which the party of the first part may use such water from the system of waterworks of the second party as it may need for the operation of its plant during all said term, but without expense to the said party of the second part for pipes, connections, or anything except the water only. It is further agreed that the party of the second part shall have the right at all times to test any and all of said lights by a competent electrician, and if said lights, or any of them, shall be found to be less than 2,000 candle power, then the amount to be paid for such light or lights for the month in which said test is made shall be the proportion of the price above specified as the quantity of light furnished by such light or lights, shall be of 2,000 candle power. Such test, however, shall be made while the lights tested are burning, and shall continue for not less than one hour consecutively, and the average candle during such time shall be the basis of determination. In witness whereof said parties have caused these presents to be executed, with the seal of said corporation, on the day and year first above written." This contract was recorded in the proper record book by the city auditor, and ever since it was entered into the same has been acted upon as a valid obligation by the parties thereto. It appears that the city council of said city, at its regular session held in the month of September, 1895, duly adopted an ordinance wherein the sum of $6,500 was appropriated for the purpose of lighting the city under said contract for the fiscal year ending August 31, 1896; and said city council, at its regular session held in September in the year 1896, by ordinance appropriated the sum of $6,000 for the purpose of lighting the city under said contract for the fiscal year ending August 31, 1897. Similar appropriations were made by ordinance for lighting the city under said contract in the month of September of each of the following years, viz.: In 1897, $7,000; in 1898, $7,000; in 1899, $8,000; in 1900, $8,000. The last mentioned appropriation—that for 1900—was, however, made after this action commenced, and on July 20, 1900. At the trial it was stipulated that by an ordinance of the city council approved September 18, 1894, an appropriation of $6,000 was made out of the general fund "for lighting the city under contract with the Fargo Gas & Electric Company" during the fiscal year commencing September 1, 1894. It is alleged and conceded that the Fargo Gas & Electric Company, for a long period of time prior to the date of entering into the contract in question, viz. prior to August 6, 1895, had been engaged in furnishing electric light for lighting the streets of the city of Fargo, and that said electric light had been so furnished to the city under a contract with the city, which contract, by its own terms, expired on the 19th day of August, 1895. At the trial, evidence was offered tending to show that at the date when the contract in question was entered into there was, as ap--

peared by the books of the city, an unexpended balance in the city treasury of between two and three hundred dollars, which balance the evidence tended to show had been transferred by the city auditor from the lighting fund to the general fund of the city. The evidence did not show that said balance was available, or could be drawn upon, to pay for lighting the city, but the fact seems to be conceded that the appropriation made for lighting the city on September 18, 1894, had not all been expended for that purpose prior to August 6, 1895, but that, on the contrary, a balance out of said appropriation of between two and three hundred dollars had not been expended for lighting the city, but the same had been diverted and transferred to the general fund by the city auditor. With the exception of such small balance, however, the entire appropriation for lighting the city which was made in the preceding month of September had, prior to August 6, 1895, been paid out under a contract for lighting the city made with said Fargo Gas & Electric Company. Against objection, testimony was introduced at the trial tending to show that the Fargo Gas & Electric Company, in reliance upon said contract, and in executing the same on its part, expended about $2,000 in and about the erection of new poles and wires to be used in furnishing the light it had undertaken to furnish by the terms of the contract in question. There are no facts which are at all material to a decision of the case which are controverted.

Counsel for the plaintiffs assails the contract made on August 6, 1895, upon the sole ground that the same, as counsel contends, is ultra vires, and void, for the reason that the same was entered into in direct violation of certain restrictive provisions contained in the organic law of the city, which provisions are embraced in § § 2261-2264 of the Rev. Codes of 1895. Said last mentioned section is as follows: "No contract shall be made by the city council and no expense shall be incurred by any officers or departments of the corporation, whether the object of the expenditures shall have been ordered by the city council or not, unless an appropriation shall have been previously made concerning such expense, except as herein otherwise expressly provided." The following extract, which we have quoted from the brief of counsel for the plaintiffs' fully and fairly states the plaintiffs' principal contention in the case: "By the terms of the contract, respondent Gas & Electric Company agreed to furnish certain electric lights, for the compensation specified in the contract, during the term of ten years beginning August 19, 1895. No appropriation concerning the expenditure to be incurred under this contract was previously made by the city council. Not only was no such appropriation made to cover the expenditure of the full ten years, but none was made to cover the expense of the first year previous to the making of the contract." To fully understand the question presented, it will be necessary to refer to certain other sections of the city charter. Section 2140 provides that "the council shall hold its regular meetings on the

first Monday of each and every month." Section 2261 provides that the "fiscal year" of all cities organized under this law shall commence on the first day of September of each year. Section 2262 reads as follows: "The city council shall at its regular meeting in September of each year or within ten days thereafter pass an ordinance, to be termed the 'annual appropriation bill,' in which it may appropriate such sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation; and such ordinance shall specify the purposes for which such appropriations are made and the amount appropriated for each purpose. No further appropriations shall be made at any other time within such fiscal year unless the proposition to make each appropriation has been first sanctioned by a majority of the legal voters of such city either by a petition signed by them or at a general or special election duly called for that purpose." By § 2190 the annual city tax levy is required to be made in the month of September of each year, and this section specifically declares that such levy shall be "based upon the annual appropriation bill for the year," which appropriation, as already shown, is required to be made at the first regular meeting in September in each fiscal year, or within 10 days thereafter. § 2262, supra. The several sections of the city charter to which we have referred, in our opinion, leave no room for doubt as to the purpose of their enactment. By their very explicit terms the city council is required at the beginning of each fiscal year—First, to "appropriate such sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, specifying the purposes for which such appropriations are made and the amount appropriated for each purpose"; and, secondly, the council is required to levy a tax based upon the said annual appropriation. All further appropriations out of city funds in the same year are strictly inhibited unless made upon the express sanction of the voters, obtained in the manner pointed out in § 2262, or unless, in exceptional cases, as provided in § 2263. In the case at bar there is no claim that the voters of the city have in any manner sanctioned or acted upon any appropriation involved in this case; nor is there a claim that the contract in question is an exceptional one, or that the same is authorized by any express provision of law. The statutes under discussion, and particularly § § 2262 and 2264, are severely restrictive in their nature, and they were obviously intended to operate as safeguards against the hasty and improvident expenditures of public funds by city officials,—a practice which, in some localities, has, as a matter of common knowledge, become an abuse and scandal. Similar statutes are found in many of the states. In *Pryor* v. *City of Kansas City*, (Mo.) 54 S. W. 499, the court, referring to a like statute, used the following language: "Similar provisions are contained in charters of many other cities in other states. Dill Mun. Corp. § 130, speaking of the reason underlying these provisions, says: 'Such limitations have been found by experience to

be necessary to prevent extravagance, are remedial in their nature,. are based upon the wise policy of paying as you go, and ought, therefore, to be construed and applied to secure the end sought.' It is a matter of history, not only in our own state, but in most of the states, that before the adoption of these safeguards the credit of our cities was greatly impaired by outstanding liabilities, created by reckless disregard of ability to discharge obligations extravagantly or injudiciously incurred. These provisions of city charters are in harmony with the policy of the state. * * * They were all intended to put the state, the counties, and the cities upon a cash basis." In *Blair* v. *City of Lantry,* (Neb.) 31 N. W. 790, the court in construing statutes identical in meaning and very similar in langauge to those under consideration, annulled a contract for the purchase of a tract of land to be used for cemetery purposes, upon the ground that no previous appropriation had been made to cover any such expenditure. The language of the court in deciding the case, which is quoted below, is, in our judgment, entirely pertinent to the questions presented in the case at bar. The court said: "It will be seen that no contract can be made by the city council, or any committee or member thereof, or any expense incurred by any of the officers or departments. of the corporation, whether such expense shall have been ordered by the city council or not, unless an appropriation shall have been previously made concerning such expense, except in certain cases where a further expenditure is sanctioned by a majority vote of the legal voters of the city, etc. The testimony clearly shows that the appropriation ordinance in the year 1884 did not include the amount required for the purchase of the lands in question, and the case is not within any of the exceptions named in the statute. Hence the contract was directly prohibited. The city council, no doubt, in entering into negotiations for the purchase of the land in controversy, as also the defendants in this case, acted in the utmost good faith, and there is not a particle of proof tending to show fraud or collusion, or an intention to disregard the law." The same court, in *Gutta-Percha & Rubber Co.* v. *Village of Ogalla,* (Neb.) 59 N. W. 513, uses the following language: "If a contract is invalid when made, because in violation of some mandatory requirement of statute, it will be deemed ultra vires, and can be ratified only upon the conditions essential to a valid agreement in the first instance." In this case the village, without having first made an appropriation to pay for the same, purchased certain apparatus for the use of its fire department. The property so purchased was delivered to and received by the village authorities, and the same was thereafter kept and used by them. The trial court and the Supreme Court held that the contract of purchase was void, for the reason that no previous appropriation had been made to cover the expense of the same. The statute upon which the court rested its decision in this case is, in our judgment, practically identical in its language, and wholly identical in effect, with § 2264 of the Rev..

Codes of 1895. The Nebraska statute (§ 89, Chap. 14, Comp. St.) reads as follows: "No contract shall be hereafter made by the city council or board of trustees, or any committee or member thereof, and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made covering such expense, except as herein otherwise expressly provided." In the same opinion the following language is used: "It is plain that the statute under consideration is mandatory, and an express limitation upon the powers of cities and villages of the class to which it applies. Indeed, stronger language could not have been used, and its meaning is too apparent for construction. It is the recognized doctrine that whoever contracts with a municipality must, at his peril, take notice of the powers conferred by its charter, and whether the proposed indebtedness is in excess of the limitations imposed thereby." We think this case is squarely in point, and we regard the language of the opinion as apposite and instructive with reference to the case at bar. Wisconsin has a similar statute, although differing in its phraseology in some respects from that in this state. In *City of Superior* v. *Norton,* 12 C. C. A. 469, 63 Fed. 357, the circuit court of appeals has placed a construction upon the statute which harmonizes with the views of the Supreme Court of Nebraska in the cases above cited. In the course of its opinion the federal court said: "The people of the state, and their representatives in the legislature, sought thus to avoid reckless extravagance and the repudiation of just obligations. We find, therefore, throughout this act, the manifest design that there shall be prior provision for the payment of every obligation incurred, and restricted measures to insure such provision." Some of the facts in the Wisconsin case are disimilar to those in the case under discussion, but the rule of construction laid down by the court, we think, is entirely in point, and the principle of the decision should govern in this case. In the case of *Kuchli* v. *City of Minneapolis,* (Minn.) 59 N. W. 1088, the plaintiff, a taxpayer, brought an action to enjoin the city from paying for certain apparatus and electric lighting service furnished the city by the Brush Electric Light Company under a contract made with officers of the city, which contract was asumed to be valid, and had, before the action was brought, been acted upon for some time by both parties as a binding contract. The court had occasion, in deciding the case, to place a construction upon the following provision of the city charter: "But neither said city council nor any officer or officers of said city shall otherwise, without special authority of law, have authority to issue any bonds, or create any debt, or any liabilities against said city in excess of the amount of revenue actually levied and applicable to the payment of such liabilities." Referring to this provision, the court said: "It clearly prohibits the anticipation of any future revenue except that for which the tax is actually levied

·at the time the liability is incurred. It is unnecessary 'to notice step by step the limitations to be found in those sections. They constitute a system of checks and limitations on the creation of debt and the incurring of liability which wind up by depriving the city council of the power, without special authority of law, to create any debt or ·other liabilities against said city in excess of the amount of revenue actually levied and applicable to the payment of such liabilities." We regard this case also as being in point in support of the plaintiffs' contention. The language of the Minnesota statute differs slightly from that found in § 2264 of the Rev. Codes of North Dakota, but the two enactments are clearly the same in their general scope and purpose, and the intent of both is to place mandatory restrictions upon the action of cities and their officers, prohibiting them from contracting either debts, liabilities, or expenses until provision shall have first been made to meet and discharge such debts, liabilities, or expenses. The court ruled in this case that the city could be enjoined from making further payments under the contract involved. The following authorities are also in point: *City of Erie* v. *Land,* (Pa.) 35 Atl. 136; *Jutte* v. *City of Altoona,* 36 C. C. A. 84, 94 Fed. 61; *Bladen* v. *City of Philadelphia,* 60 Pa. 464; *City of Indianapolis* v. *Wann,* (Ind. Sup.) ·42 N. E. 901; *Putnam* v. *City of Grand Rapids,* (Mich.) 25 N. W. 330; *Webster* v. *City of Kansas City,* 18 Mo. App. 217; *Tennant* v. *Crocker,* (Mich.) 48 N. W. 577; *City of Kearney* v. *Downing,* (Neb.) 81 N. W. 509; *Wiegel* v. *Pulaski Co.* (Ark.) 32 S. W. 116; *Minneralized Rubber Co.* v. *City of Cleburne,* (Tex. Civ. App.) 56 S. W. 220.

Respondents' counsel have called attention to *City of North Platte* v. *North Platte Waterworks Co.,* (Neb.) 76 N. W. 906, citing *McElhinney* v. *City of Superior,* (Neb.) 49 N. W. 705. An examination of those cases will clearly show that nothing whatever in the same militates against the construction placed upon the Nebraska statute in the other Nebraska cases above cited. Said last mentioned cases are not in point as sustaining respondents' contention. But we deem it unnecessary to further support the ruling announced in the cases cited. It will suffice to state that, except certain Illinois cases, hereafter to be cited, we have failed to discover a single adjudicated case based upon a statute the same or similar to that under consideration which announces a contrary rule; while, on the other hand, many cases supporting the rule have not been cited in this opinion. In this state the point involved, and upon which, in our judgment, the case must turn, viz. the proper construction to be placed upon the provisions of § 2264 of the Rev. Codes and cognate sections, has been passed upon and settled by this court in the recently decided case in *Engstad* v. *Dinnie,* 8 N. D. 1, 76 N. W. 292. That case is, in our opinion, in all of its essential features, analogous to the case at bar, and the same sections of the statute which we are discussing in this case received a careful consideration and construction at the hands of this court in deciding the case from Grand

Forks. In that case taxpayers of the city of Grand Forks were seek-
ing to enjoin the officers of the city from carrying out contracts.
made with the city for the construction and equipment of an electric
light plant, and to prevent the city from issuing warrants in pay-
ment for the same. In that case, as in this, the contract was re-
garded by all parties thereto as legal and binding; and the several
contracts involved there, as here, were in part performed by the
parties thereto prior to the institution of the action. The principal
question there involved was whether, under the circumstances shown
to exist by the record, the contracts to build and equip the plant
created valid obligations of the city. In its opinion this court stated
the contention as follows: "The contention is that the city, in
attempting to exercise this power, has wholly failed to conform to
plain charter requirements which are made prerequisites to its exer-
cise, and without which the said contracts could not be lawfully en-
tered into, or the plant be lawfully paid for, out of the general fund
of the city or at all." In that case, as in this, there had not been, prior
to making the contracts, any appropriation made or tax levied by the
city council to meet the expense involved in carrying out the con-
tracts. In deciding the case, the court placed a construction upon
the language of § § 2190, 2262, and 2264 of the Codes. Referring
to these sections, the following language was employed: "In our
opinion, the objections to these contracts as binding obligations are
radical and insurmountable. They were entered into at a time and
under circumstances which are fatal to their validity. The contracts
were without authority of law, for the reason that no such improve-
ment as that comprehended in the erection of a brick building and its
equipment with the machinery mentioned was ever authorized or pro-
vided for either by an annual appropriation bill for said city
for 1897 or by the tax levy of 1897 for the then current
fiscal year." In the same case the court said: "The city
was without power either to contract for, build, or operate the im-
provement in question. § 2264. In short all of its contracts and dis-
bursements in connection with the plant were contrary to the statute,
ultra vires, and therefore void; and hence all further proceedings
and disbursements under the contracts should have been enjoined
by the trial court." It therefore appears that in the Grand Forks
case this court, in adjudging that the contracts there involved were
ultra vires, and wholly void, placed its ruling upon the simple fact
that the contracts were entered into prematurely, and before an ap-
propriation or a tax levy had been made by the council to meet the
expense incurred in carrying out said contracts. We expressly
justified the decision by a reference to the sections of the city
charter which we have already cited.

We have no hesitation in ruling that the record in the case at
bar brings this case squarely within the construction of the statute
established in the case last cited. The contract in question was
entered into on the 6th day of August, 1895, which date occurs in

the last month of the fiscal year, which began on the 1st day of the preceding month of September. There is no claim made that at the regular session of the council which occurred in September, 1894, or at any time prior to or on August 6, 1895, the date of the contract, the council, by ordinance, resolution, or otherwise, made, or attempted to make, either an appropriation or a tax levy to meet the expense necessarily incurred in carrying out the particular contract in question, either for a period of ten years, or for one year, or for any period whatsoever. On the contrary, it is undisputed that the council at no time prior to entering into the contract in question took action with reference to an appropriation of city funds or with reference to levying a tax to meet the expense or liability incurred or to be incurred · under the contract. As we have already said, in effect, we are compelled to hold that these omissions of duty by the city council are fatal to the validity of this contract. Nor does this ruling, in our judgment, involve any injustice either to the Fargo Gas & Electric Company or the city, inasmuch as it is elementary that any person or corporation entering into contractual relations with public corporations or their officers are chargeable with notice of all provisions of the charter of such corporations relating to the subject matter of their contracts, and are, therefore, presumed to have acted with full knowledge of such charter provisions.

It is contended that on August 6, 1895, the date of this contract, there was in the city treasury a balance of between two and three hundred dollars belonging to the lighting fund, which had been appropriated for lighting the city at the annual meeting of the council held in September, 1894, which appropriation was, however, in terms required to be paid out under a contract made with said gas and electric company. The existence of any such unexpended balance is controverted, but, from our standpoint it is wholly immaterial whether such balance was or was not in the treasury when the contract in suit was entered into. If in the treasury, it was a balance left over out of an appropriation of $6,000 made nearly one year prior to entering into the contract in question, and made at a time when the city was being furnished electric light under a contract with said Gas & Electric Company, which, by its terms, expired on August 19, 1895, upon which date the contract of August 6, 1895, took effect. Under these circumstances it is too clear for discussion that the appropriation of $6,000, made in September, 1894, was made to meet a liability for lighting the city which was then existing. Besides, under the terms of the statute, such appropriation only could be expended for an expense incurred during the fiscal year in which the appropriation was made, viz.: in the fiscal year ending September 1, 1895. It is, therefore, apparent that no admissible version of the facts of this case will warrant this court in holding that the alleged unexpended balance in the treasury was available to meet

a demand which, by its·terms, did not mature in whole or in part until the next ensuing fiscal year, and which demand arose under a contract not made until nearly one year after the money was appropriated. Besides, as has been seen, the contract in question, by its own terms, looked forward to future appropriations and tax levies as being the source out of which the money required under the contract was to be provided by the city of Fargo. To this may be added the fact that at the meeting of the council occurring in September, 1895, a sum was appropriated sufficient in amount to meet all the obligations accruing under the contract in the then current fiscal year. Hence it conclusively appears that no appropriation was made, either at or prior to the date of the contract in question, or during that fiscal year, to meet the expense, or any part of the expense, arising under the contract of August 6, 1895. In point of fact, about two weeks elapsed after the contract took effect, August 19, 1895, before any attempt was made to appropriate funds with which to meet the expense to be incurred thereunder, or any part thereof.

Counsel for respondents, in their brief, submit the following propositions, which embody respondents' chief contention: "The section (2264) does not pretend to make all contracts of the city void unless an appropriation is made prior to or at the time of their execution. It is only where an expense is incurred under the contract for which no appropriation has been made." Counsel further say: "Our contention is that, if an appropriation is made by the city before expense is actually incurred, either under a contract or otherwise, the statute is satisfied." To this counsel adds the following by way of explanation: "It would seem axiomatic and elementary that no expense could arise or be incurred until there was something due,—some money due and payable from the city,—or at least until the obligation had matured, and such matured obligation to pay money is in itself a debt." This court has carefully read and considered the language of § 2264 in connection with the other sections of the city charter governing the revenues and expenditures of cities organized under Chap. 28 of the Political Code, and has reached the conclusion that the construction of § 2264, as contended for by counsel, is inadmissible, and would violate not only the plain language of the statute, but its equally plain purpose. In our opinion, the practical effect of such construction would be to pervert the obvious design of the lawmaker, and to introduce into·the administration of cities in this state the very mischiefs which the statute and all similar statutes were intended to prevent The construction contended for manifestly excludes from the inhibitions of § 2264 all contracts made and all expense incurred, either by the city council or officers of the city under which the funds of the city are not to be disbursed until the next or some succeeding year, after the obligation is created. In other words, the sweeping prohibitive language used in said section has, as counsel contends, no application whatever to contracts made and debts incurred by the city in any case where pay day is postponed until some date

in a succeeding fiscal year. This court cannot yield its assent to a construction of the statute, which, in its effect would, in the judgment of this court, not only emasculate the language, and destroy the effect of the enactment, but would have the further effect to create a new law, under which the very abuses sought to be cut off by the legislature would be ushered in under the wing of judicial legislation. But counsel contend that no indebtedness was created by the contract of August 6th by its mere execution, and not until the city had been actually furnished light under the contract for the period of one month, and that all disbursements for the light so furnished could, under the terms of the contract, be provided for by the annual levies and appropriations before the same became due and payable, and that this arrangement as to disbursements fully satisfied the terms of the statute. In support of this contention counsel have cited a line of cases among which is the recent and leading case of *Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341. We are of the opinion that the Walla Walla case is not an authority in point. There the plaintiff was granted an injunction restraining the city from proceeding to erect and pay for a system of water supply for the city to be owned and operated by the city. Prior to the commencement of the action, the city, under express charter provisions permitting it to do so, had entered into a contract with the plaintiff covering a period of 25 years, under which the plaintiff had erected a water system for the supply of the city, and had been supplying the city and its inhabitants with water for several years. The court held that under the circumstances surrounding that case, it would result in an impairment of the obligations of the contract made with the plaintiff if the city should proceed to build and operate a plant of its own, and accordingly the city was enjoined from doing so. The further point was made that in its said contract with plaintiff the city had entered into an indebtedness which exceeded the limit of debt permitted to be incurred by the city charter, and that the contract was, for that reason, ultra vires and void. But the contract with the plaintiff bound the city to pay plaintiff only by installments, and not until a specified service had been rendered the city under the contract. Construing this contract, the court held that the aggregate amount to be disbursed under it was not, within the meaning of the debt limit statute, a true measure of the debt; that under such statute no part of the whole indebtedness would be considered, except such part as had matured, and become a present debt of the city, actually due and payable. In making this ruling the court was considering only the one matter of the debt limit. No such inhibitive statutes as those existing in this state were to be construed in the Walla Walla case. Therefore we have no hesitation in declaring that the language used by the court in that case cannot be wrenched from its setting, and made to subserve the purposes of the respondents in the case at bar. In this case there is neither allegation, proof, nor contention that the contract of August 6th

exceeded the debt limit of the city of Fargo. The contract is assailed on no such ground.

But counsel for respondents have cited certain cases from Illinois where a statute like that in this state has been construed, and we shall concede that the same are in point as supporting their contention. See *Carlyle Light & Water Co.* v. *City of Carlyle*, 31 Ill. App. 325. This case was affirmed, but without discussion, by the Supreme Court of the state. See *City of Carlyle* v. *Carlyle Water Light & Power Co.*, 140 Ill. 445, 29 N. E. 556. We shall not attempt any analysis of the Illinois adjudications, nor shall we comment upon the same further than to say—and this with all respect for the courts which made the decisions—that, in our judgment, the effect of them is to defeat the purpose of the statute, and to break down the safeguards erected by the lawmaking branch of the government. To this we will add that, in our judgment, the authority of the decisions from Illinois is overborne by an immense preponderance of cases from other states, some of which have been cited in this opinion. In this state we regard the principal question in this case settled by the ruling made in *Engstad* v. *Dinnie,* 8 N. D. 1, 76 N. W. 292.

A further point—one not made by counsel—has occurred to this court in its study of the record. It is this: The contract of August 6, 1895, was not preceeded by or based upon any ordinance enacted by the council of the city of Fargo authorizing the council to enter into the contract, or authorizing any officer of the city to make or sign the same. The only authority for signing the contract ever given was a mere resolution passed by the council. There is neither a statute of the state nor an ordinance of the city commanding the city council of the City of Fargo to make annual levies or appropriations of money to meet the expenditures required to be met by the terms of the contract. Under such circumstances we are unable to see in what manner the city council could be compelled, by mandamus or otherwise, to make the appropriations agreed to be made by the terms of the contract. If the contract cannot be enforced in accordance with its provisions, it is mere worthless paper. It is true that under the charter the city is vested with a general authority to provide "for lighting the city," but the manner of exercising this power is nowhere pointed out by the charter. In such cases the charter itself provides that the power shall be exercised through the medium of an ordinance. It was not so exercised in this case. On this point, see *Engstad* v. *Dinnie,* supra. Inasmuch as counsel have not discussed this point in this court, we shall refrain from passing upon the same in this case. We place our conclusions wholly upon the other features of the case discussed in this opinion.

It will follow from what has been said in this opinion that the trial court erred in dismissing the action. The judgment of the trial court will be reversed, and that court will be directed to enter judgment for the relief demanded in the complaint, together with the costs and disbursements of both courts. All the judges concurring.