## CITY OF FT. PIERCE v. SCOFIELD ENGINEERING CO.

### No. 6346.

Circuit Court of Appeals, Fifth Circuit.

April 14, 1932.

Alto Adams and G. R. Nottingham, both of Ft. Pierce, Fla., for appellant.

P. H. Odom, of Jacksonville, Fla., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The city of Fort Pierce comes here complaining of the action of the District Court in overruling its demurrer to plaintiff's declaration, and in thereafter denying its motion for a directed verdict. As to the declaration and the proof the same insufficiencies are relied on. These are: That though the suit is one upon contract against a municipality, the declaration does not allege, nor does the proof show, the existence of those prerequisites to a valid contract which the city charter makes mandatory—that the contract was countersigned by the city clerk, that it was indorsed in writing and approved by the city attorney, and that the clerk of the city had certified to the city commission that the money required for the fulfillment of the alleged contract was in the treasury to the credit of the funds from which it was to be drawn, and that the same was not appropriated for any other purpose. The charter does make these specific requirements. As to the signature of the city attorney, and the city clerk, it provides that the city attorney shall prepare all contracts in which the municipality is concerned, and shall indorse on each his approval of the form and correctness thereof, and no contract with the municipality shall take effect until his approval is so endorsed thereon. As to the city clerk, it provides that he is to countersign all contracts as evidence of the authorization of such contract by the city commission, and no contract in behalf of the city shall be valid unless countersigned by the city clerk. It also provides that no contract, agreement, or other obligation involving the expenditure of money, shall be entered into unless the city clerk first certifies to the city commission, or other proper officer, that the money required for such agreement, obligation, or other expenditure is in the treasury to the credit of the fund from which it is to be drawn, and not appropriated for any other purpose.

Appellee urges here, as it did in the court below, that the invoked provisions have no application to the contract sued on; that they apply only to contracts made by the city in the exercise of its general functions. That this contract relates to its proprietary business of conducting an electric light plant and is governed by other sections of the charter which contain no limitation on its contractual power, but leave the city competent to contract substantially as a private owner.

The trial court took a position between that of plaintiff and defendant. It held with defendant that no general liability of the city had been shown. It held with plaintiff that the contract was valid as a proprietary contract, but it further held that plaintiff must look for the satisfaction of its judgment to the profits from the plant.

In a memorandum opinion filed by the court it is said: "Any judgment rendered in this case cannot be the general liability of the city to be paid out of general taxations as other judgments are paid. It is an obligation to be paid out of the profits of the operation of the electric plant. The plaintiff will be held to knowledge of that situation in making the contract for it appears from the contract and the action of the City Commission, that it was an arrangement within the purview of Section 74, Chapter 10."[1]

Plaintiff's suit was upon a contract for engineering services. It alleged and proved that by letter of July 16, 1928, to the city of Fort Pierce, it proposed to the city of Fort Pierce "for a fee of 6% of the total cost of the work, payable one third upon presentation of report based on the estimated cost of work, one third upon presentation of plans and specifications for the corresponding portion of improvements and extensions, and one third upon completion of the respective contracts for improvements" to "investigate your situation—present and prospective requirements for Generating Station capacity and equipment, and make recommendations as to your improvements and extensions, with estimated cost of same covering immediate and estimated five year requirements." It proposed, "Following your consideration, decision and financing of improvements to be carried out from time to time within this five year period," to prepare the plans, supervise the letting of bids, the making of contracts, and performance of work for such additions, changes, and improvements. It further proposed to investigate and report on the city's present electric distribution system for a charge to be measured by the time required in the inves-

[1] Subchapter 10, § 74, of the Charter provides: "The profits arising from the operation of the utility plants of the City, after the payment of current interest and sinking fund requirements of the bonded indebtedness of such plants, may be placed in a reserve account for the replacement of the equipment thereof, or may be used for extensions of the plants and of the service mains of such utilities, but shall not be used for any other purpose." (Sp. Laws 1927, c. 12746.)

tigation and preparation of the report at a per diem rate of $50 for each assistant engineer and $100 for the principal plus traveling and living expenses.

It alleged and proved that plaintiff entered upon the work of investigating, estimating, and recommending improvements and extensions, and made a report estimating the cost of same for a five-year period at $475,000, and that it estimated and reported on the electric distribution system. For the first service it presented a bill for $9,500, one-third of 6 per cent. of the estimated cost; for the second, a bill of $12,870.91. It alleged, but it made no proof, that the greater part of the work had already been performed, and that a fair and reasonable fee for what it had done was in addition to the bills rendered, the sum of $19,000, to wit, 4 per cent. of $475,000 estimated cost for the five-year period. It alleged, and again it did not prove, that plaintiff had incurred a loss to the extent of $10,000 for expenses in organizing its force of engineers, which, because of defendant's failure to carry out the contract, had become useless. It offered proof, without having alleged, that if the plaintiff had fully completed the work called for in the estimates it furnished for the five-year plan, the cost would not have been over $9,000 to it, leaving it a net profit of $10,000 on the balance of 4 per cent. or $19,000 stipulated in the contract. It alleged, but it did not prove, that defendant had availed itself of the labor and services of plaintiff and was therefore estopped to deny the legality of the contract. On the contrary, it offered a letter from the city manager denying liability, advising that the city had never accepted or used or taken advantage in any way of any of the reports or maps and that they were being therewith forwarded to plaintiff. It did not undertake to allege or prove compliance with any formal requirement of the charter, but relied upon its position that the resolution adopting the proposal, without more, made a valid contract.

Defendant offered to prove, its offers were rejected, and the rejections duly made grounds of error, that the city attorney did not indorse on the contract his written approval thereof. That the city clerk did not countersign the contract, that the money for the work called for in the resolution was not, and never had been, available, either from the city's general funds or from the power plant's funds. That at the time plaintiff made its proposal the entire plant of the city of Fort Pierce was only of the value of $200,000, and that the estimated cost of $475,000 for additions thereto was wholly unreasonable; that a reasonable fee for investigating the distribution system would have been, instead of $12,000 as billed by plaintiff, the sum of $1,500, and that a reasonable fee for architect's services for preparing and supervising the plans for a public utility would have been 4.1 per cent. of the actual cost of the improvements, to be paid when and as they might be financed and actually installed. The defendant proved by plaintiff on cross-examination that the plans and specifications that he submitted were merely for the information of the city to determine whether they wanted to go through with the improvements; that the question of the city's ability to pay never arose; that the city never got to that point, though plaintiff discussed with the commission from time to time how they would finance them.

At the conclusion of the evidence plaintiff and defendant moved for a directed verdict. Defendant's motion was denied. Upon plaintiff's motion a verdict was directed for $37,251 and the following judgment entered thereon: "It is therefore considered by the Court that the plaintiff have and recover of the defendant $37,251.00. That this judgment be paid out of the profits of the operation of the electric plant of defendant, or out of the net proceeds derived from the sale thereof in event the same shall be sold before the payment of the judgment."

Before considering the point of the legal insufficiency of what was done to make a contract binding on the municipality at all, it may be said that if plaintiff was entitled to recover it is perfectly apparent that neither pleading nor proof sustains the judgment in the amount or in the form rendered. Plaintiff's suit was on a contract to recover against the city generally the contract price. It was not a suit as was Travelers' Insurance Co. v. Village of Wadsworth, 109 Ohio St. 440, 142 N. E. 900, 903, 33 A. L. R. 711, where the petition alleged that the board made the contract in anticipation of revenues to be derived from the operation of an electric light plant, and the parties had contracted looking only to that fund; nor is it a suit for damages for breach. In this suit plaintiff should have either a general judgment or none, and it could recover only those amounts which under the terms of the

proposal had been then earned. These amounts are one-third of 6 per cent. of the estimated cost of the work, provided to be paid on the filing of the estimate, and whatever sum was due it for its work on the distribution system. These two amounts, as rendered, came only to $21,500. Further, if the action could be considered as one for breach of contract in not ordering the estimated work to be done, such suit could not be maintained, for the contract, as to the making of the proposed improvements, is wholly wanting in mutuality and definiteness of obligation. It does not provide that the city will absolutely order any work done. It provides conditionally only that if in the discretion and judgment of the city any of the estimated work is financed and undertaken, the remaining percentages will be allowed, not upon the work estimated, but upon the work actually done. Such provisions do not constitute a binding agreement; they constitute merely a proposal giving the city the option to proceed further, if and when it is advised. Boiled down, the proposal on which plaintiff sued, if enforceable at all as a contract, is enforceable only as to the agreement for the payment of 2 per cent. of the estimated cost of the additions and improvements, and as to the per diem and expenses for work done on the distribution system.

■ But the contract is not valid for any recovery. It is a contract with a municipality, from which the city has derived no unjust enrichment, and upon which in a suit at law for money due under its terms, the city may be held liable only if the contract has been duly executed in accordance with the powers granted in its charter. McQuillan on Municipal Corporations, vol. 3, chap. 25, §§ 1266 to 1282.

This is not a suit in which the city has taken and retained the benefits of a contract within the general scope of the city's powers fair and reasonable, on its face, and fairly and reasonably complied with by the other party to it, and the city, because of mere irregularities in execution, seeks to keep the fruits while denying the obligations of the contract. In such cases courts have ever been resourceful to avoid unjust results, and liberal in their interpretation of charter provisions. This is a case of the very kind for which charter provisions were designed. Here it is claimed that the credit of a small community has been pledged without restriction to payment of a large sum, not for work or materials furnished the city, but for services of a preliminary nature, from which the city has neither received nor retained a single benefit, incurred under a contract which, in its general committal of the city's interests, especially as to what the city should have to pay, to the sole determination of the other contracting party, was so improvident and contrary to the general interests of the city and its inhabitants as that nothing stands in the way of, but on the contrary, every consideration counsels, the strictest application of charter provisions designed to save the public from such reckless and unconsidered action.

■ We do not agree with appellee that the charter of the city of Fort Pierce may be construed as providing restrictions upon improvident entry into contracts where the subject-matter is general, and not where it pertains to the electric light plant. Nothing in the charter so indicates. Chapter 12746, Special Laws of Florida 1927, is one complete legislative act. Webb v. Dorlac, 75 Colo. 49, 224 P. 220. It contains no single word limiting or declaring inapplicable to contracts incurring a general indebtedness in connection with the light plant, the general provisions for the safeguarding and protecting of the city's interests from that tendency to the liberal exercise of the power in debt making, where authority and obligation do not meet in the same person, where the officials bind but the people pay, which has made it necessary to strictly limit the debt contracting power of municipalities in the interest of the people and their posterity. None of the cases, therefore, which appellee cites, while correct enough in their general declaration and application of principles to their facts, fit the case at bar. None of them warrant holding the people of Fort Pierce to the payment of the sums here demanded. Here is a case of a proposed contract, the larger part of it plainly of a tentative character, depending on future consideration by the commission, both as to its desire and as to its ability to go forward, and all of it entered upon in an optimistic, loose, and informal way either because it was expected by the city that more definite arrangements would be made before its liability would become fixed for the payment of any substantial sums, or with a reckless disregard of consequences. Here not only have the provisions of the charter requiring certain officers to sign and countersign the contract not been complied with, a failure which under some circumstances might well be held immaterial, Brode v. City of Phila-

delphia, 230 Pa.. 434, 79 A. 659, but there has been an inexcusable disregard of the most important provision for safeguarding the people from the reckless extravagance of those who, themselves often irresponsible, incur debts for those responsible, to pay, that there should be money in the treasury not appropriated for other purposes, to discharge the obligation. McQuillan, Municipal Corporations, vol. 3, § 128. To such improvident contracts the ordinary and wise rule governing municipal officers applies, that they "can make a contract only in the method prescribed and if not so made, the contract is invalid, and unenforcible." McQuillan on Municipal Corporations, vol. 3, p. 836. This is the law in substantially every state in the Union. It is the law in Florida. Town of Madison v. Newsome, 39 Fla. 149, 22 So. 270, 271. Where the mode is prescribed and limited by law, this mode is exclusive. In some jurisdictions this rule is rigorously applied, to the extent of defeating recovery for defects in manner, sometimes even where there has been unjust enrichment. Cf. Superior v. Norton (C. C. A.) 63 F. 357; Lee v. Racine, 64 Wis. 231, 25 N. W. 33; Times Pub. Co. v. Weatherby, 139 Cal. 618, 73 P. 465; Frick v. Los Angeles, 115 Cal. 512, 47 P. 250.

There is practically uniform authority that where the charter contains a provision like this for an appropriation,[2] it is regarded as mandatory, invalidating all attempts at contracting in disregard of it. Municipal Securities Corp. v. Kansas City, 265 Mo. 252, 177 S. W. 856; Pollard Auto Co. v. Nashua, 80 N. H. 233, 116 A. 136; Parker v. Philadelphia, 92 Pa. 401; Empire Voting Machine Co. v. City of Chicago (C. C. A.) 267 F. 162; Roberts v. Fargo, 10 N. D. 230, 86 N. W. 726, 727; Hinkle v. Philadelphia, 214 Pa. 126, 63 A. 590, 593.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

---

[2] "No contract, agreement or other obligation involving the expenditure of money shall be entered into, nor shall any ordinance, resolution or order for the expenditure of money be passed by the City Commission or be authorized by any officer of the City, unless the City Clerk first certifies to the City Commission or to the proper officer, as the case may be, that money required for such contract, agreement, obligation or expenditure is in the treasury to the credit of the fund from which it is to be drawn, and not appropriated for any other purpose. The sum so certified shall not thereafter be considered unappropriated until the City is discharged from the contract, agreement or obligation." Sp. Laws 1927, c. 12746, § 29 (s).