(70 South. 852)

No. 21534.

FARMERVILLE STATE BANK v. POLICE JURY OF UNION PARISH (BOARD OF DIRECTORS OF PUBLIC SCHOOLS, Intervener).

(Jan. 10, 1916. Rehearing Denied Feb. 7, 1916.)

*(Syllabus by the Court.)*

1. COUNTIES ⬅150 — PARISHES—LIMITATION OF EXPENDITURES—ANNUAL TAX LEVY.

The purpose of the makers of the constitutional and statutory law since 1879 has been to identify the parish revenue of each year with the taxes from which it is derived; and, as payment of the tax on movable property cannot be enforced before October 1st of the year in which it is levied, and the tax·on immovable property does not become delinquent until December 31st of that year, it follows that a large, and perhaps the larger, part of the taxes of a particular year may not be actually collected until some time during the year following that in which they are levied. Nevertheless they constitute the parish revenue for the year of the levy, and must be dealt with accordingly.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 165, 166, 215–217; Dec. Dig. ⬅150.]

2. COUNTIES ⬅150—PARISHES—WARRANTS—FUNDS.

Warrants drawn by a police jury in April, May, June, and July for the proportion of the parish taxes that the law devotes to the school fund must be considered as drawn against the proceeds of the taxes levied during the preceding year, since the law prohibits the drawing of such warrants save against cash actually in the treasury, and the taxes of the current year are not, during those months, even collectible and still less collected.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 165, 166, 215–217; Dec. Dig. ⬅150.]

3. COUNTIES ⬅150 — PARISHES — EXPENDITURES BY FISCAL AGENT—RIGHT TO REIMBURSEMENT.

The fiscal agent of a parish, having received the entire proceeds of the parish taxes for a particular year, and having failed to reimburse itself therefrom, the amount advanced by it in taking up warrants drawn against said proceeds for the proportion required by law 'to be paid to the school board has no claim upon the parish revenue of the following year for such reimbursement, save in so far as such revenue may exceed the expenses of the year.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 165, 166, 215–217; Dec. Dig. ⬅150.]

4. COUNTIES ⬅150—PARISHES—FUNDS—RESOLUTION OF POLICE JURY — PAYMENT TO SCHOOL BOARD—RIGHTS OF FISCAL AGENT.

Four-fifths of a parish revenue for a particular year having been turned over to the fiscal agent, and no part thereof having been paid to the school board, and the estimated balance appearing to be not more than sufficient to satisfy the legal claim of that board to three-tenths of such revenue, a resolution of the police jury, directing the payment to it of such balance is sustained; the resolution being interpreted to mean that the school board shall receive the proportion to which it is entitled and no more.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 165, 166, 215–217; Dec. Dig. ⬅150.]

Appeal from Fourth Judicial District Court, Parish of Union; John B. Holstead, Judge.

Action by the Farmerville State Bank against the Police Jury of Union Parish, wherein the Board of Directors of the Public Schools intervened. From an adverse judgment, plaintiff appeals. Affirmed.

See, also, 69 South. 270, 137 La. 835.

H. G. Fields, of Farmerville, for appellant. H. B. Warren, Dist. Atty., of Ruston (J. B. Crow, of Farmerville, of counsel), for appellees.

Statement of the Case.

MONROE, C. J. Plaintiff, as holder of certain claims against the parish of Union, prosecutes this appeal from a judgment dissolving a preliminary injunction, obtained by it, which prohibited defendant from paying to the board of directors of the public schools of the parish the balance of the parish taxes to be collected after March 16, 1915, and otherwise rejecting its demands.

The circumstances out of which the litigation has arisen are shown by the record to be as follows:

Plaintiff had for several years acted as the fiscal agent of the parish of Union, under contracts with the police jury similar, as we assume, to that of January 14, 1914, which has been filed in evidence, and reads as follows, to wit:

"January 14, 1914.

"Hon. Police Jury of the Parish of Union—Gentlemen: We beg to submit to you the following proposition to act as fiscal agent of Union parish for the year 1914:

"We will cash all witness claims regularly issued by the clerk of the court in criminal cases, and all warrants regularly issued by your clerk and countersigned by your president, and carry same at the rate of eight (8%) per cent. per annum interest on overdrafts; interest to be payable at your regular June and December meetings. We will also allow you interest at 8 per cent. per annum on any balance you may have to your credit or that the parish treasurer may have to his credit, payable at the above regular meetings. This does not apply to script issued or claims allowed in excess of your budget adopted at your January, 1914, meeting.

"[Signed]     Farmerville State Bank,
                "By O. Baughman, Cashier.'

"On motion duly seconded the above proposition is accepted on the terms and stipulations contained therein, and the Farmerville State Bank is hereby declared the fiscal agent for the parish of Union for the year 1914.

"[Signed]     J. A. Peek, President.
                "Emmett J. Lee, Clerk."

In January, 1915, plaintiff held obligations of the parish to a considerable amount, including warrants issued in 1914 by the police jury to the school board which it had taken up and was carrying as fiscal agent, and it declined to renew its contract for the year 1915. As taxes were thereafter collected, however, and paid over to the parish treasurer, he continued to deposit them in the plaintiff bank, and plaintiff continued to apply them to the extinguishment or reduction of the parish obligations so held by it, until up to March 16, 1915, it had so received and applied $18,867.52, and up to May 20th had so received and applied $21,097.89 out of a total of $27,135.05 collected, and expected to be collected during the year. Thereupon

(March 16, 1915) the police jury adopted a "resolution" reading as follows:

"Whereas, the board of directors of the public schools has not been paid its pro rata of the parish taxes for the year 1914, collected up to this date, in accordance with the provisions of Act No. 257 of 1910:

"Therefore be it resolved: That all parish taxes collected and paid over to the treasurer from and after this date shall be paid to the said board * * * in preference to, and by priority over, any other claims or vouchers, until the said board * * * shall have been paid the entire sum due and owing it under the terms of said act. Be it further resolved that, after the said pre-existing indebtedness shall have been discharged in the manner aforesaid, it shall be the duty of the parish treasurer, subsequently, when he shall receive the proceeds of parish taxes, to set apart the portion due to the school board, to wit, the equivalent of three mills on the dollar, less the commission of 4 per cent., paid the assessor for his services, and pay the sum or sums, so set apart to the board of directors of the public schools, upon the order of its president and treasurer, taking their receipts as his voucher when any such payment is made."

And upon April 3d following plaintiff obtained the preliminary injunction now under consideration, alleging, among other things:

That during the year 1914 the police jury had issued warrants to the school board, payable "out of the 1914 funds," to the amount of $7,535.41, which, in accordance with its contract, had been paid by it with the knowledge and understanding on its part and on the part of the police jury and school board that it was to be reimbursed from said taxes of 1914; that, in addition to said warrants, it had advanced money for the payment of witness claims, juror fees, and other warrants, which was also to be reimbursed from the parish revenues of the year 1914; that it protested against said resolution at "the time of its passage and afterwards; that the police jury of Union parish is now unable to meet its financial obligations and current expenses, as it has no fiscal agent for the year 1915, and is not in a position to meet its indebtedness to the Farmerville State Bank for the money paid out by it for the parish while acting as its fiscal agent in 1914, other than [from] the revenues of said parish for the year 1914, for which warrants have been issued and appropriations made, and more particularly for the said above-described warrants which were taken up by petitioner and paid to the school board of this parish on its 1914 appropriation; * * * that the said purported resolution is prejudicial to the interests of petitioner as a creditor of the parish, * * * is detrimental to the financial standing of the parish, * * * an attempt to divert the general funds and taxes of Union parish into one channel and for

one single purpose, contrary to the constitutional powers granted to the said police jury, opposed to the statutory provisions of the law; * * * and is null, void, and of no force and effect; * * * that the board of directors of the public schools of Union parish have been fully paid by the said bank, as fiscal agent for 1914, all of the money and funds due it by and under Act 257 of 1910, and * * * [through J. G. Ray, superintendent] has received from petitioner the said sum of $7,535.41 for the use and benefit of the schools, * * * and that petitioner is now entitled to receive from the parish funds and taxes for the year 1914 the money which it paid over to the school board in behalf of the parish of Union to cover said warrants; * * * that said tax collector will probably collect within the next 60 or 90 days over $7,000 in parish taxes and pay same to the treasurer of Union parish, and that the said * * * superintendent of public schools has notified your petitioner that he will insist upon the payment of any and all such funds to the school board under said purported resolution; * * * that the said purported resolution is defective and illegal, in that it does not stipulate any specific amount due or claimed to be due the school board, and is without any definite instructions as to how much said parish treasurer is to pay over to said school board, but directs the payment of an unlimited amount, in that it provides that all parish taxes collected and paid over to the treasurer shall be paid by him to said board, * * * and that the payment thereof would constitute six mills out of the revenues of the parish for the year 1914, instead of three mills authorized by law, which three mills had previously been paid by the issuance of the warrants aforesaid."

The prayer of the petition is that the police jury and parish treasurer be enjoined from making any payments to the school board under the resolution in question until the controversy shall have been determined, and that, after hearing, said resolution be decreed void, or, should it be held that the school board is entitled to any of the taxes affected thereby, that the proportion be restricted to three mills on the dollar thereof, and that plaintiff be paid from the balance of the fund in preference to all other creditors.

The police jury admits that it issued the warrants described by plaintiff and that they were paid by plaintiff, but denies that they were drawn against the revenues of 1914, and alleges that they were drawn against the pro rata due to the school board of the revenues of 1913; that, if plaintiff had none of those revenues wherewith to pay them, when presented, it was because all moneys due to the school board therefrom had been applied by plaintiff, with whom said revenues were deposited, to the extinguishment of other claims held by it; and that, in paying said warrants, plaintiff merely replaced the money so used, and elected to carry the warrants as evidences of indebtedness, rather than other vouchers of older dates. It avers that plaintiff is an ordinary creditor of the parish, having become so by advancing money from year to year for current expenses and other purposes, at a profitable rate of interest; that in each year when the amount advanced exceeded the revenues plaintiff was aware of the fact, and extended credit for the excess, and has never required or received security therefor; that no part of the parish revenues of 1914, or any other funds, are pledged to plaintiff; that, if any contract or agreement between defendant and plaintiff could, or should, be construed as a pledge of the 1914 revenues, such pledge did not, and could not, include the pro rata of taxes collected for the year 1914, which by operation of law belongs to the school board, etc.

The parish treasurer appeared pro forma, and the school board intervened, and, adopting the answer of the police jury, further alleges:

"That the * * * tax collector * * * has up to and including his last settlement with the parish treasurer * * * collected taxes upon the assessment rolls of 1914, on an assessment of 10 mills * * * levied by the police jury, * * * the net sum of $21,097.89; that under * * * Act 257 of 1910, and article 255 of the Constitution * * * 3 mills of the taxes so collected, or three-tenths of the above amount, to wit, $6,329.36, is set apart, dedicated, and belongs to * * * intervener, except * * * $642.35, which amount was paid * * * direct by the tax collector on or about the —— day of May, 1915; that the balance due, * * * to wit, $5,687.01, has not been paid, and is now due, * * * and the purpose of the resolution complained of * * * is to authorize and insure the payment of said sum."

The record shows that the budget of expenditures for 1913 was adopted November 13, 1912, and that the budget for 1914 was adopted January 13, 1914, and it is admitted that ordinances were passed levying the ten-mill tax for the years 1913 and 1914, but we are not informed as to the dates of their passage.

The following, with other, admissions are also to be found in the record, to wit:

"It is admitted that after the 1913 taxes were collected the sheriff and tax collector paid no part thereof to the board of school directors, * * * but that all taxes so collected were paid over to the treasurer of the parish, and that on the several dates which they bear [in April, May, June, and July, 1914] the police jury issued its warrants Nos. 3111, 3167, 3198, 3199, 3200, 3201, and 3222, * * * and that said warrants were delivered to the treasurer of the board of school directors, and by him presented to plaintiff, as fiscal agent for the parish, and paid."

"It is admitted that the net amount of taxes collected for the year 1911 and paid over to the parish treasurer on an assessment of 10 mills was $24,627.69; that for 1912 the net amount so paid to the treasurer was $24,033.33; that for 1913 the net amount of such taxes was $25,869.59.

"It is admitted that the collection of taxes for each year was made from month to month from the filing of the roll, and concluded about or during the month of June of the following year.

"It is admitted that the net amount of taxes for the year 1914 collected * * * on an assessment of 10 mills, and paid over to the treasurer prior to the 16th day of March, 1915, was $18,867.52; that the total net amount of such 1914 taxes collected and paid over to the treasurer up to this date (May 20, 1915) is $21,097.-89, also $642.35, which the sheriff has paid direct to the treasurer of the school board on May ——, 1915.

"It is admitted that the gross amount of parish taxes assessed on the roll of 1914 on an assessment of 10 mills is $27,135.05."

Mr. Emmett Lee, clerk of the police jury, being examined as a witness for plaintiff, testified, in part, as follows:

" 'Q. Mr. Lee, what warrants have issued to the treasurer of the school board * * * to cover its pro rata share, if any, of the taxes of the parish of Union for the year 1914? * * * A. My recollection is that we— No other warrants were issued to the treasurer of the school funds in 1914 except Nos. 3111, 3167, 3198, 3199, 3200, 3201, and 3222. Q. Mr. Lee, the last of the bills which you have produced, which was covered by the warrant 3222, shows on its face to cover the balance out of 1913 taxes collected after the assessor's commission is deducted. I will ask you again what warrants, if any, have issued since the issuance of the one I have just mentioned to cover the school board's pro rata of any of the taxes collected on the 1914 assessment? * * * A. I don't think any have issued. * * * Q. Isn't it a fact that no warrant has issued to the school board to cover any part of the taxes which have been collected on the 1914 assessment roll? A. Yes; that is a fact. * * * '

"It is admitted that the total amount of the vouchers and warrants issued in the year 1914 and taken up by plaintiff, as fiscal agent, is $21,483.58. * * *

"It is admitted that at the date the resolution in contest was passed, to wit, March 16, 1915, all moneys which had been paid over to the parish treasurer from the proceeds of the 1914 taxes then collected had been paid out by him to the plaintiff, * * * and applied to the payment of warrants and vouchers which it, as fiscal agent of the parish, had taken up from time to time. And it is further admitted that for several years past the plaintiff has been the fiscal agent of the parish, and during those years, as the treasurer of the parish received moneys from various sources, that he immediately paid the same over to the plaintiff to apply to vouchers and warrants which it had taken up as fiscal agent."

### Opinion.

[1-4] The Constitution provides that:

"No parish * * * tax for all purposes whatsoever shall exceed in any one year ten mills on the dollar of assessed valuation." Article 232.

There are other provisions with which we have no present concern authorizing special taxes in excess of that limitation. The Constitution and statutes also provide that the police juries *may* devote the proceeds of six of the ten-mill tax thus authorized, and that they *shall* devote the proceeds of three mills of said tax to the support of the public schools. Const. 1898, art. 254; Act 27 of 1908; Act 257 of 1910, proposing an amendment to the Constitution of 1898, and now incorporated in Const. 1913 as article 255.

The act and constitutional provision last above mentioned reads, in part, as follows:

"That the police juries * * * shall levy, collect, and turn over to the parish school boards * * * for the support of the public schools of their respective parishes, * * * the proceeds

of at least three mills of the annual tax which they are empowered to levy on each dollar of the assessed valuation of the property thereof," etc.

Section 2745 of the Revised Statutes requires the police juries, "before they shall fix and decide on the amount of taxes to be assessed for the current year," to cause to be made out and published for at least 30 days an estimate exhibiting the various items of expenditure proposed to be made from the proceeds of such taxes; and it has frequently been held by this court that the making and publication of the estimate or budget 30 days in advance is a condition precedent to the validity of the tax levy. Parish of Lincoln v. Huey, 30 La. Ann. 1244; Police Jury v. Bouanchaud, 51 La. Ann. 860, 25 South. 653; State ex rel. Hutchinson v. Sheriff, 52 La. Ann. 1620, 28 South. 157; Howcott v. Smart, 128 La. 135, 136, 54 South. 586, and authorities there cited. It has also been held that a police jury is not required to make out and publish its budget within the same year that it levies the tax predicated thereon, but that, to the contrary, there is good reason why the budget should be prepared and published before the beginning of such year. Murphy v. Police Jury, 118 La. 403, 42 South. 979; Board v. Police Jury, 123 La. 416, 49 South. 5. Although, however, the law provides that taxes shall be "collectible" (in the sense as to taxes on immovable property, that they become due and may be paid) in the year in which they are levied, the tax collectors are required to enforce payments during that year only of the taxes levied upon movable property, and are neither authorized nor required to enforce payment of the taxes levied on immovable property until after the 2d of January of the following year; such taxes not becoming delinquent until the 31st of December of the year in which they are levied. It happened that, when the Constitution of 1879 was adopted, a great deal of confusion existed in the matter of the designation of the taxes; the revenue actually collected in a subsequent year being sometimes identified with the tax levied in the preceding year, from which it was derived, and sometimes dealt with as the revenue of the year in which it was collected. At the date of the adoption of that Constitution (July 23, 1879) the tax rolls for the year were not completed. They were not required to be filed until November 10th and the payment of the taxes called for by them was not enforceable until late in the following year. Act 96 of 1877 (Ex. Sess.) §§ 27, 33, 35, 36, 52, 53.

Not only, however, did section 2745 of the Revised Statutes require the police juries, before deciding upon the amount of taxes to be assessed for the current year, to cause to be made out and published the budgets of expenditures upon which such taxes were to be predicated, but Act No. 30 of 1877 (Ex. Sess.) p. 47, declared that no police jury should make any appropriation in any year in excess of the actual revenue of the parish for such year, or approve any claim or make any expenditure which separately or together with other claims approved or expenditures made should be in excess of the actual revenues of that year; that the revenues of the several parishes for each year should be devoted to the expenditures of that year (save that any surplus might be devoted to paying debts incurred in previous years); that the police juries might, however, contract for fixed sums of money with officers who, under existing laws, were receiving fees, commissions, or mileage; that no evidence of indebtedness or warrant for the payment of money should after October 1, 1877, be issued by any parish officer, save against money actually in the treasury, on penalty of fine and imprisonment.

As matters then stood, therefore, the taxes of which it was possible to enforce payment in 1879, having been levied in previous

years and predicated upon budgets of expenditures for those years, were attributable to the payment of the debts of those years; the payment of the taxes to be levied in 1879 could not be enforced until 1880; and the payment of the taxes to be levied in 1880 could not be enforced until 1881. It was generally the case that the taxes were designated by the year in which they were collected, rather than that in which they were levied, and the parishes were paying the current expenses of each year from taxes budgeted for and levied during the preceding year, and were one year behind in their fiscal affairs. The convention therefore incorporated the two following articles in the Constitution of 1879, to wit:

"Art. 211. The tax shall be designated by the year in which it is collectible, and the tax on movable property shall be collected in the year in which the assessment is made."

"Art. 218. All the articles and provisions of this Constitution regulating and relating to the collection of state taxes and tax sales shall also apply to and regulate the collection of parish, district and municipal taxes."

And articles 234 and 243 of the Constitutions of 1898 and 1913 are identical in terms with the two thus quoted.

Act 77, p. 88, of the Acts of 1880 (section 1) levied an annual tax for the "calendar year 1880" and "every succeeding calendar year" it declared (section 5) that the assessments made in 1879 were superseded by those to be made under its authority in 1880; that the assessments so to be made should constitute the assessments for the taxes collectible in 1880; that (section 6):

"All taxes shall be collected [meaning, as we shall see, collectible, in the sense that they might be paid, though payment of real estate taxes was not enforceable until the statute until after December 31st of each year] in the calendar year in which the assessment thereof is made, and they shall be designated as 'the taxes of the year 1880,' and of each subsequent year, accordingly as they are collectible; and the taxes assessed in the year A. D. 1880 and each subsequent year shall be due in the calendar year 1880, and in each subsequent year, as soon as the tax roll is filed in the office where

the mortgage records are kept; and the taxes on immovable property shall be paid on or before the thirty-first day of December in each respective year, * * * and the taxes on movable property shall be paid on the first day of the calendar month next succeeding the filing of the tax roll: * * * Provided, that no forced collection of taxes on movable property shall be made before the first day of November, unless the collector has good reason to believe that the state, parish or municipal corporation will lose the same."

Section 34 provided that proceedings to enforce the payment of taxes on immovable property should be inaugurated on and after January 2d of each year.

The present Revenue Act (being Act 170 of 1898, p. 346) is much to the same effect. Section 30 requires the tax rolls to be filed "as soon as possible before the first day of September." Section 34 declares that the taxes shall be due and payable from the date of the filing of the roll. Section 40 provides:

"That all taxes shall be collected in the calendar year in which the assessment thereof is made, and they shall be designated as the 'taxes for the year 1898,' and of each subsequent year, accordingly as they are collectible, and the taxes assessed in the year A. D. 1898, and each subsequent year, shall be due in the calendar year 1898, and in each subsequent year, as soon as the tax roll is filed, * * * and they shall be paid on or before the thirty-first day of December in each respective year, * * * and the taxes on movable property shall be paid on the first day of the calendar month next succeeding the filing of the tax roll: * * * Provided that no forced collection of taxes on movable property shall be made before the first day of October, unless the collector has good reason to believe that the state, parish or municipal corporation will lose the same: Provided, further, that all taxes unpaid on the 31st day of December * * * shall bear interest at the rate of two per cent. per month from said date." [Interest changed to 10 per cent. per annum by Act 171 of 1912.]

Section 50 requires the tax collectors to inaugurate proceedings to enforce payment of the taxes on immovable property on January 2d of each year; and (as we have shown) it is admitted in this case that the collection of the taxes is concluded "about or during the month of June" of the year following the levy.

Act 32 of 1902 amends and re-enacts Act 30 of 1877, and reads, in part, as follows:

"Section 1. * * * That no police jury * * * shall, in any one year, make any appropriation of, approve any claim against or make any expenditure from the annual revenue of that year, which appropriation, approved claim or expenditure shall, separately or together with other appropriations, approved claims or expenditures, be in excess of the estimated revenue of that year.

"Sec. 2. * * * That the revenues of the several parishes * * * of each year shall be dedicated as follows: First, all statutory charges shall be paid from the respective funds upon which they are imposed; Second all charges for services rendered annually under time contracts; Third, all necessary usual charges provided for by ordinance or resolution. * * *"

Section 3 authorizes the issuance of certificates to serve merely as prima facie evidence of indebtedness against excess of revenues under certain authorized contracts for public improvements.

Section 4 relates to municipalities other than parishes.

Section 5 prohibits the issuance of evidence of indebtedness or warrants by parish or municipal officers, except as provided in section 3, and except certificates issued to jurors and witnesses for services in the courts.

We conclude from the foregoing résumé of the law and the evidence that the purpose of the lawmakers since 1879 has been to identify the parish revenue of each year with the tax from which it is derived; that the taxes in course of collection in April, May, June, and July, 1914, when the warrants filed by plaintiff were issued, were the taxes of 1913, which, as collected, constituted (within the meaning of the law) the revenue of 1913; that they also, upon the dates upon which the warrants were drawn, constituted the only actual cash in the treasury against which the police jury could lawfully have drawn such warrants; and that plaintiff, having received the entire proceeds of those taxes, should have reimbursed itself therefrom the amount advanced by it in taking up the warrants; and, failing so to do, has no claim against the balance to be collected of the tax of 1914 here in controversy, save in so far as the revenue for the year 1914 may show an excess over and above the obligations of the year. The school board is placed on the budget for 1914 for $6,500, but upon the basis of the estimated revenue it would be entitled to $8,200.51 (or three-tenths of $27,-135.05), of which amount it has received $642.35, leaving due it a balance of $7,558.16; whereas, according to the same estimate, the total balance of the taxes to be collected (after deducting the $21,097.89 which have been turned over to the plaintiff) is but $6,037.16, which seems to indicate that there will be no excess. The evident purpose of the police jury was, however, to secure to the school board only the proportion of the taxes to which it is legally entitled, and we do not apprehend that the board will be allowed to take more than that, under cover of the somewhat general language of the resolution here in controversy.

The judgment appealed from is therefore affirmed.